Lakelands Racing Association, Inc., Appellant, *v.* Fairview Township, Appellee.

Argued May 6, 1974, before President Judge Bowman, and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Robert J. Amelio,* with him *Dillman, Sheerer & Schuchert,* for appellant.

*Donald C. Buseck,* with him *Gary V. Skiba* and *Quinn, Gent, Buseck and Leemhuis, Inc.,* for appellee.

OPINION BY JUDGE KRAMER, May 20, 1974:

This is an appeal filed by Lakelands Racing Association, Inc. (Lakelands) from an amended order dated November 13, 1973 of the Court of Common Pleas of Erie County dismissing Lakelands' preliminary objections to a complaint in assumpsit filed by Fairview Township (Township) praying for judgment under the Township's amusement tax ordinance. Allowance of an appeal from the interlocutory order of the court below was granted by this Court under Section 501(b) of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, as amended, 17 P.S. §211.501 (b).

The Township enacted its amusement tax ordinance, to become effective March 27, 1972, on the basis of The Local Tax Enabling Act, Act of December 31, 1965, P. L. 1257, as amended, 53 P.S. §6901 et seq. Section 3 of the Township's ordinance states: "On and after the effective date of this ordinance, it shall be unlawful

for any person to continue to conduct, or thereafter to begin to conduct, any form of amusement within Fairview Township, unless an amusement permit shall first have been issued. Every person desiring to continue to conduct or hereafter begin to conduct any amusement within Fairview Township, shall file an application for an amusement tax permit with the Board. Every application for such permit shall be made upon a form prescribed, prepared and furnished by the Board. . . . Upon receipt of a completed application form, the Board shall grant and issue to each applicant an amusement permit for each place of amusement within Fairview Township, valid for the calendar year of issuance. . . . Permits may be renewed annually before the first day of January, upon application made to the Board." Section 2(b) of the ordinance specifically includes "thoroughbred horse racing tracks" in its definition of "amusement." Section 4 of the ordinance provides: "A tax is imposed upon the admission fee or privilege to attend or engage in any amusement at the rate of one cent for each ten cents or major portion thereof, of the established prices charged the general public, or a limited or selected group thereof, which shall be paid by the person acquiring such privilege." Although Section 4 makes clear that the stated burden of the tax is placed upon the patron, Section 5 of the ordinance places liability for the collection and payment of any such tax upon the amusement operator.

Lakelands owns and operates a horse racing plant known as "Commodore Downs" within the boundaries of the Township pursuant to a license granted to it by the State Horse Racing Commission on May 24, 1973. Lakelands did not apply for the amusement permit required under Section 3 of the ordinance, nor did it collect any such tax or file any reports required under the ordinance.

On July 18, 1973, the Township filed its complaint in assumpsit seeking a judgment in an amount in excess

of $10,000 plus costs; and interestingly, requested the court to grant "other relief that may be necessary to insure Defendant's compliance" with the ordinance. It would appear from the prayer of the complaint that the Township was also seeking equitable relief in its assumpsit action. The complaint generally sets forth the facts stated above, but fails to state the period during which Lakelands operated its racetrack subsequent to the effective date of the ordinance. The complaint merely states that "[o]n or about May 24, 1973, the Defendant began charging admission for entrance to its racetrack. . . ."

Lakelands filed preliminary objections in the nature of a demurrer wherein it was alleged that the Township's ordinance was invalid because: (1) it was contrary to the provisions of The Local Tax Enabling Act, 53 P.S. §6901 et seq.; and (2) it imposed a tax on the admission price paid by a patron which price was already subject to a tax imposed by the Commonwealth of Pennsylvania (Commonwealth) pursuant to the Act of December 11, 1967, P. L. 707, 15 P.S. §2651 et seq. [hereinafter State Horse Racing Law]. In dismissing the preliminary objections, the court below held that the Commonwealth had not preempted the field, and secondly, that, under its interpretation of the applicable statutes, the Township had statutory authority to levy the subject amusement tax.

On appeal to this Court, the same issues are presented to us, i.e., whether the Township's amusement tax is invalid because the Commonwealth has preempted the field, and also whether the Township's amusement tax is contrary to the provisions of The Local Tax Enabling Act.

In view of the procedural posture of this case, our review is restricted to the lower court's ruling on the preliminary objections. Therefore, we will accept the allegations of properly pleaded facts found in the com-

plaint to be as stated above and decide this case on the questions of law presented.

Section 2 of The Local Tax Enabling Act, 53 P.S. §6902, provides in pertinent part: "The duly constituted authorities of the . . . township of the second class . . . may, in their discretion, by ordinance or resolution, for general revenue purposes, levy, assess and collect . . . such taxes as they shall determine on persons, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivisions. . . . Such local authorities shall not have authority by virtue of this act: . . . (3) Except on sales of admission to places of amusement . . . to levy, assess or collect a tax on the privilege of employing such tangible property as is now or does hereafter become subject to a State tax. . . ." It seems clear under the wording of this statute that the Township has the power to levy a tax on admissions to places of amusement. The problem arises by virtue of the fact that the Commonwealth, in 1967, provided for a tax on the admission price to a thoroughbred horse racetrack. This problem necessitates another reference to The Local Tax Enabling Act, namely, Section 3, 53 P.S. §6903, wherein it is stated: "If, *subsequent* to the passage of any ordinance or resolution under the authority of this act, the General Assembly shall impose a tax or license fee on any privilege, transactions, subject or occupation, or on personal property *or on sales of admissions to places of amusement* . . . the act of Assembly imposing the State tax or license fee thereon shall automatically vacate the ordinance or resolution passed under authority of this act as to all taxes accruing subsequent to the end of the current fiscal year of such political subdivision. *It is the intention of this section to confer upon such political subdivision the power to levy, assess and collect taxes upon any and all subjects of taxation, except as above restricted and limited,*

*which the Commonwealth has power to tax but which it does not tax or license,* subject only to the foregoing provision that any tax or license shall automatically terminate at the end of the current fiscal year of the political subdivision." (Emphasis added.)

The Township contends that by virtue of both Sections 2 and 3 of The Local Tax Enabling Act, the court below properly held that the legislative intent was to permit the Township to levy this amusement tax in addition to the same tax levied, albeit at a higher percentage, viz., 15%, by the State on the same admissions. We cannot agree.

Prior to The Local Tax Enabling Act and its predecessor, the 1947 "Tax Anything Act,"[1] a municipality, under the long-established principle of preemption, could only enact tax ordinances in those areas where there was no prior State tax statute. It seems clear, therefore, that the legislative intent of the words, "If, subsequent to the passage of any ordinance," found in The Local Tax Enabling Act was to make it clear that the Commonwealth was preserving its preemption powers with respect to any tax which it might later (after the passage of The Local Tax Enabling Act) desire to enact exclusively.

The Township contends that because its ordinance taxes the patrons of all places of amusement in the Township and is not restricted solely to racetracks, that there is no duplication of the State's 15% tax. The Township places great reliance upon two recent opinions of our appellate courts, but that reliance is misplaced. In both *F. J. Busse Company v. Pittsburgh,* 443 Pa. 349, 279 A. 2d 14 (1971) and *Munnell Appeal,* 219 Pa. Superior Ct. 525, 281 A. 2d 906 (1971), the respective appellate courts held that the municipality's

---

[1] Act of June 25, 1947, P. L. 1145, as amended, 53 P.S. §6851 et seq. (repealed).

taxes and the Commonwealth's taxes in question were in fact different from each other and, therefore, the principle of duplication was not involved. Justice POMEROY, in *Busse, supra,* stated the test used in determining whether a tax duplicates another tax and results in double taxation which is prohibited. He noted that the incidence of the two taxes is controlling and that the incidence of a tax embraces the subject matter thereof and, more importantly, the measure of the tax. Thereafter, he concluded that the local ordinance did not duplicate the State tax "because it does not tax the same subject matter, nor is it measured by the same tax base." 443 Pa. at 357, 279 A. 2d at 18.

Applying that test to this case, it becomes obvious that the Township's amusement tax is on the same subject matter, i.e., the admission price of the patron and it is measured by that same base.[2] It is also important to note that the Commonwealth not only controls the tax rate on admissions to a racetrack, but it also controls the minimum and maximum charges for admission,[3] and the age of the patrons permitted to obtain admission to a track.[4]

---

[2] Section 6 of the State Horse Racing Law, 15 P.S. §2656(a), provides in part: "Every corporation holding a thoroughbred horse race meeting pursuant to this act shall collect, in addition to the admission price of tickets sold or otherwise disposed of, for each such meeting held by such corporation, a tax equivalent to fifteen percent of such admission price, or fifteen cents (15¢) whichever is greater, which tax is hereby imposed. In case of failure to collect such tax, the same shall be imposed upon the corporation holding the race meeting."

[3] Section 2 of the State Horse Racing Law, 15 P.S. §2652(b) (1) provides: "The State Horse Racing Commission shall have power to fix minimum and maximum charges for admission to thoroughbred horse race meetings at which pari-mutuel betting is conducted, but such minimum charges shall not be less than fifty cents (50¢) for general admission, exclusive of taxes. . . ."

[4] Section 22 of the State Horse Racing Law, 15 P.S. §2672, provides: ". . . and no corporation which is licensed under this

The Township argues that since the Legislature, in Section 2(b)(1) of the State Horse Racing Law, 15 P.S. §2652(b)(1), stated that the "minimum charges shall not be less than fifty cents (50¢) for general admission, *exclusive of taxes*" that it must have intended to acknowledge the possibility of a municipality levying taxes in addition to the State admission tax. We do not believe this to be a valid argument for the reason that the use of the plural word "taxes" could just as easily be interpreted as pertaining to the plural of the word "charges" in the same section for the purposes of consistency. In addition, under the Statutory Construction Act of 1972, Act of December 6, 1972, P. L.     No. 290, 1 Pa.S. §1902, we are directed that "[t]he singular shall include the plural, and the plural, the singular" unless such construction would be inconsistent with the manifest intent of the Legislature. Our reading of the State Horse Racing Law leads us to the conclusion that the Legislature did not intend by the use of the term "exclusive of taxes" (15 P.S. §2652(b)(1)) to include an additional duplicative tax levied by a municipality.

The Township also relies upon two recent Supreme Court cases involving municipal amusement taxes on bowling alleys. A review of these cases, however, permits us to state that they are inapposite. In both *Clearview Bowling Center, Inc. v. Hanover Borough*, 430 Pa. 579, 244 A. 2d 20 (1968), and *Swatara Town-*

act shall permit any person who is actually and apparently under 18 years of age to bet at a thoroughbred horse race meeting conducted by it and no such corporation shall permit any person who is actually and apparently between ten and 18 years of age to attend a thoroughbred horse race meeting conducted by it unless such person is accompanied by a parent or guardian and no such corporation shall permit any person who is actually and apparently under 10 years of age to attend a thoroughbred horse race meeting conducted by it."

*ship v. Automatic Bowling Centre,* 419 Pa. 482, 214
A. 2d 725 (1965), the municipalities levied an amuse-
ment tax on admissions to bowling alleys at a percent-
age rate of the amount charged for bowling or for ad-
mission. Our Supreme Court's decision in each case
was based upon a distinction between a municipal tax
on the patron and a State tax on the proprietor. In
this case, the "stated burden" of both the municipal and
Commonwealth taxes are on the same person, i.e., the
patron.

The leading case in these matters is *United Tavern
Owners of Philadelphia v. Philadelphia School District,*
441 Pa. 274, 272 A. 2d 868 (1971). In that case, the
court said:

"In Pennsylvania, cities have no power to act un-
less that power has been granted to them by the state
legislative body by an enabling act. Moreover, even
when cities have been given powers to act, if the state
has preempted the field in a specific area, then in that
area cities have no power despite the wording of the
enabling act on which they rely.

.    .    .    .

"In determining whether, by the enactment of the
specific statute, the Commonwealth completely barred
a municipality's enactment of an ordinance relating to
the same field, we will refrain from striking down the
local ordinance unless the Commonwealth has explicit-
ly claimed the authority itself, or unless there is such
actual material conflict between the state and local
powers that only by striking down the local power can
the power of the wider constituency be protected."
441 Pa. at 278-280, 272 A. 2d at 870-871. The court also
laid down the following principle: "In Smith, Kline,
[437 Pa. 197, 262 A. 2d 135 (1970)] we interpreted
'state license fee' to mean only those fees imposed for
purposes of raising revenue. By so doing, we ascribed

to the General Assembly the same philosophy of preemption, as contained in the various tax-enabling acts, which we have followed in developing our own preemption doctrine in connection with other areas where state legislation and local ordinances must be reconciled, i.e., the philosophy of abstaining from striking down a local ordinance unless there is direct conflict with a state statute. In the area of taxation, that philosophy means that if the local tax is not imposed directly on specific transactions on which the state is dependent for revenues, then the local ordinance poses no real threat to the state's revenue plans. Consequently, the local tax is permitted. However, when the state decides to enter a specific area for purposes of raising state revenues, a municipal tax in the same area could pose a threat, either by causing a diminution of the taxed activity or by increasing the costs of collection. Consequently, the state has preempted that area insofar as specially directed taxation is concerned." 441 Pa. at 284-285, 272 A. 2d at 873.

In summary then, following all of the principles which we have reviewed, we conclude that the Township's amusement tax ordinance is invalid for the reason that the Commonwealth has preempted the field by virtue of its 15% tax imposed on all admission fees paid by patrons at a thoroughbred racing track. We believe the legislative intent in inaugurating thoroughbred racing in Pennsylvania was a revenue raising venture. The taxes to be raised from the restricted number (only 6) of thoroughbred race tracks to be permitted throughout the Commonwealth are intended to benefit all of the people within the Commonwealth and not intended to create a windfall for the six municipalities wherein these tracks may be situated. Therefore, since the Commonwealth clearly intended to preempt the area, the Township's ordinance must fall

because the incidence of the tax levied by the ordinance embraces the same subject matter as the State tax.[5]

In light of these holdings, we

### ORDER

AND Now this 20th day of May, 1974, based upon the foregoing opinion, it is ordered that the amended order of the court below dated November 13, 1973 is hereby vacated, the preliminary objections filed by Lakelands Racing Association, Inc., to the complaint of Fairview Township are hereby sustained, and the complaint filed by Fairview Township, filed July 18, 1973, at No. 1961-A-1973 in the Court of Common Pleas of Erie County is hereby dismissed.

---

[5] Although not controlling in our holding in this case, we believe it noteworthy to point out that under the provisions of the Sterling Act, Act of August 5, 1932, P. L. 45, as amended, 53 P.S. §15971, which pertains to the taxing authority of the City of Philadelphia, there can be no question that the patrons who attend a racetrack in Philadelphia cannot be charged a municipal admission tax in addition to the State admission tax.