**POCONO DOWNS, INC.**

v.

**CATASAUQUA AREA SCHOOL DISTRICT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.
Decided Jan. 3, 1996.

review of the Jameses' brief reveals no challenge to the trial court's affirmance of the Board.

David G. Knerr, for appellant.

Jerry B. Chariton, for appellee.

Before FRIEDMAN and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

Catasauqua Area School District (Catasauqua) appeals a Lehigh County Court of Common Pleas order granting the motion for summary judgment of Pocono Downs, Inc. (Pocono), denying Catasauqua's motion for summary judgment and permanently enjoining Catasauqua from implementing its off-track betting (OTB) wagering tax resolution.

The following facts are undisputed. Pocono, a harness racing corporation licensed by the Commonwealth of Pennsylvania (State), established an OTB "nonprimary location" in Catasauqua. This establishment engages in pari-mutuel horse race wagering under the Race Horse Industry Reform Act.[1] On May 3, 1994, Catasauqua adopted a resolution imposing a tax pursuant to the Local Tax Enabling Act (LTEA).[2] Specifically, the resolution created an OTB wagering tax on a patron's privilege of placing wagers in the amount of one percent of each wager at an OTB establishment within Catasauqua's jurisdiction.[3]

Pocono filed a complaint in equity and a petition for preliminary injunction to prevent the implementation of the tax. The injunction was granted following stipulation and bond. Both parties then moved for summary judgment. The trial court held that the tax was both explicitly and implicitly preempted by the State's taxing powers and regulation of the horse racing industry. Accordingly, the court ruled in Pocono's favor and did not need to reach Pocono's constitutional challenge to the resolution on the basis of uniformity and equality in taxation. Catasauqua now appeals to this Court.

1. Act of December 17, 1981, P.L. 435, *as amended*, 4 P.S. §§ 325.101—325.402.

2. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901—6924.

3. The resolution originally provided for a ten percent tax. Catasauqua estimated that the tax would generate $100,000 in annual revenue. Pocono informed Catasauqua that the tax would generate $4.8 million in annual revenue, which would create a violation of limits set forth in the Local Tax Enabling Act. Based on this information, Catasauqua adopted a resolution on June 23, 1994, reducing the tax rate from ten percent to one percent.

The issue before us, which we conclude is dispositive in this case, is whether the local tax is explicitly, statutorily "preempted" by the State under Section 2(1) of the LTEA, 53 P.S. § 6902(1) (a school district may not levy taxes "on a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax or license fee").

Catasauqua argues that its tax does not duplicate a State tax and thus does not violate section 2(1). It submits that, pursuant to the Race Horse Industry Reform Act, the State taxes patrons on admissions to an OTB facility, while the tax here, although also imposed on patrons, is based on the amount of each wager. It further submits that the State imposes a gross wager tax on OTB operators, based on overall volume of business in a horse race, while, by contrast, the stated purpose of the tax here is to tax the patron, and is on each specific wager. Catasauqua contends that, to be preempted under section 2(1), the subject matter of the tax, the measure of the tax base *and* the identification of the party subject to the tax must be the same, and that such is not the case here. *See Commonwealth v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986) (Flaherty, J., dissenting). It asserts that taxes are not duplicative if the stated burden of the taxes is on different taxpayers, even if tax bases are the same. *See, e.g., Board of Commissioners of Swatara Township v. Automatic Bowling Centre, Inc.*, 419 Pa. 482, 214 A.2d 725 (1965); *Mellon Square Garage, Inc. v. Pittsburgh Public Parking Authority*, 442 Pa. 229, 275 A.2d 654 (1971); *Lakelands Racing Association, Inc. v. Fairview Township*, 13 Pa.Cmwlth. 561, 320 A.2d 391 (1974).

Pocono responds that the tax is duplicative and thus explicitly preempted.[4] It argues that the local tax on the privilege of wagering is in fact a tax on the amount being wagered, which is already taxed by the State under Section 222 of the Race Horse Industry Reform Act, 4 P.S. § 325.222. It challenges Catasauqua's claim that the local tax is only on the privilege of wagering as exalting form over substance. Despite the terminology, it maintains, the tax here is on the same subject and the same base as the State tax and therefore violates the LTEA.

■■■ We agree with Pocono's argument and conclude that the trial court correctly ruled in its favor. The relevant legal standard cited and applied in previous decisions by the Courts of Pennsylvania is as follows:

In determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, *the operation or incidence of the two taxes is controlling as against mere differences in terminology* from time to time employed in describing taxes in various cases. The incidence of a tax embraces *the subject matter thereof and, more important, the measure of the tax,* i.e., the base or yardstick by which the tax is applied. If these elements inherent in every tax are kept in mind, the incidence of the two taxes may or may not be duplicative.

*Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 652, 136 A.2d 821, 825–826 (1957), *appeal dismissed*, 357 U.S. 571, 78 S.Ct. 1383, 2 L.Ed.2d 1547 (1958) (emphasis added). *See also, F.J. Busse Co. v. Pittsburgh*, 443 Pa. 349, 279 A.2d 14 (1971); *Provident Mutual Life Insurance Co. of Philadelphia v. Philadelphia Tax Review Board*, 658 A.2d 500 (Pa.Cmwlth.1995), *petition for allowance of appeal denied*, ── Pa. ──, 666 A.2d 1060 (1995); *Middletown Township v. Alverno Valley Farms*, 105 Pa.Cmwlth. 311, 524 A.2d 1039 (1987), *petition for allowance of appeal denied*, 517 Pa. 600, 535 A.2d 1058 (1987).

■■ Applying this standard to the case before us, we first decide that the nomenclature used in connection with the taxes here should not be a determinant factor. This undercuts Catasauqua's focus on whether the "stated burden" of its tax is on a different taxpayer than that of the State tax. The decisions cited by Catasauqua do not support the proposition that a local tax is not duplicative merely because it expressly purports to be a different tax than an existing State tax or to be applicable to a different taxpayer than one already taxed. In *Automatic Bowl-*

---

4. The State Harness Racing Commission and the State Horse Racing Commission filed an amicus curiae brief supporting Pocono's position on this issue and the issue of implicit preemption.

*ing,* the Supreme Court of Pennsylvania rejected appellants' interpretation of what the "stated burden" of the local tax was, noting the express language of the tax ordinances. The Court did not simply accept the "stated burden" as the actual incidence of the tax. Instead, it concluded, for example, that "the duties which are imposed upon appellants are not, as they assert, inconsistent with taxation of the privilege expressly stated to be the subject of the tax," and "determined that the *actual* imposition of the tax is upon the patron." *Id.* at 487–488, 214 A.2d at 728 (emphasis added). In *Lakelands,* this Court noted that the "stated burdens" of the subject taxes were the same, but, unlike in *Automatic Bowling,* there was no dispute that the "stated burden" was different from the actual burden. The Supreme Court did not mention "stated burden" in either *Wilsbach* or *Mellon Square Garage.* These cases do not hold that terminology or the identity of the taxpayer is to be considered to the exclusion of the standard for testing the incidence of a tax set forth in *National Biscuit* and its progeny.[5]

 We therefore proceed to the heart of the matter, which is a comparison of the subject matter of the State and local taxes

here and, more important, the measure of those taxes. *National Biscuit.* First, we reject the overly technical notion that the State only taxes nonprimary locations on wagers *qua* wagers and Catasauqua seeks only to tax a patron on his or her privilege of wagering. We agree with the trial court that the State, at least to some degree, already taxes the privilege of wagering through taxes on admissions as well as taxes on wagers. Of greater significance, and simply put, the subject matter of *both* taxes is the wagers of patrons. Second, the measure of the taxes, i.e., the amount of wagering, is clearly the same. That the state taxes a percentage of aggregate wagers and Catasauqua seeks to tax a percentage of each individual wager is a distinction without relevance, for the sum of the individual wagers at the OTB facility is the aggregate of those wagers. Were we to give effect to distinctions such as that, Section 2(1) of the LTEA would essentially be rendered meaningless.

In sum, both taxes are on the same subject matter, patrons' wagers, and are measured on the same base, the amount of wagers, and so Catasauqua's tax fits squarely within the *National Biscuit* standard as duplicative of the existing State tax.[6] Thus, Catasauqua's tax cannot stand under the LTEA.[7]

5. Nor do the cases otherwise support Catasauqua's appeal. The plurality opinion in *Wilsbach* addressed implicit preemption and in any event is of limited precedential value. *Clement & Muller, Inc. v. Philadelphia Tax Review Board,* 659 A.2d 596 (Pa.Cmwlth.1995). In *Automatic Bowling,* the Supreme Court rejected a claim that a local tax on bowling alley patron admissions was in reality a tax on the privilege of bowling alley proprietors to employ tangible property at their facilities, which was subject to State taxation. In *Mellon Square Garage,* the Court interpreted a sublease and held that a local tax on parking place transactions "more closely resembles a tax on the privilege of doing business than one on the sale of each parking space." *Id.* at 233, 275 A.2d at 657. The Court found a "sales or other similar tax required to be collected by [appellant] as collecting agent for a taxing authority upon any sale or activity conducted by appellant" to be different than a mercantile tax on appellant's privilege of transacting business measured by gross volume of annual business. *Id.* In *Lakelands,* this Court agreed that a local amusement admissions tax was invalid where it duplicated a State tax on race track admissions. We decline to accept Catasauqua's attempt to construct a rationale from such cases for allowing its tax,

given the express prohibition of section 2(1) and the question presented here of whether a tax on a percentage of individual wagers duplicates a tax on a percentage of total wagers.

6. We also agree with the trial court's rationale that the legislature expressed an intent in the Race Horse Industry Reform Act "to place all primary and non-primary locations on equal footing so that no site would be at a competitive disadvantage in their purses." *Pocono Downs, Inc. v. Catasauqua Area School District* (No. 94–E–38, filed April 27, 1995), slip op. at 6. This comports with the following statement in our *Lakelands* decision:

> The taxes to be raised from the restricted number (only 6) of thoroughbred race tracks to be permitted throughout the Commonwealth are intended to benefit all of the people within the Commonwealth and not intended to create a windfall for the six municipalities wherein these tracks may be situated.

*Lakelands,* 320 A.2d at 395.

7. Because we agree with the trial court that the tax here is expressly prohibited by section 2(1), the court's order is appropriately affirmed irrespective of whether the tax is also implicitly

Accordingly, the trial court's order is affirmed.

### ORDER

AND NOW, this 3rd day of January, 1996, the order of the Court of Common Pleas of Lehigh County, at No. 94–E–38, dated April 27, 1995, is hereby affirmed.

preempted. We note that *Catasauqua* apparently does not challenge the trial court's conclusion on this question as without legal precedent, at least in the field of horse racing, but instead argues that such precedent should be questioned. *See Clement & Muller; Liberty Bell Racing Association v. Philadelphia Tax Review Board*, 86 Pa. Cmwlth. 83, 483 A.2d 1063 (1984); *Lakelands.* There is certainly no cause to do so in this case.

In addition, based on our concurrence with the trial court's decision, there is no need to reach the remaining questions argued by the parties, not addressed by the trial court, of whether the tax violates the uniformity clause of the Pennsylvania Constitution and/or the Equal Protection Clause of the United States Constitution, and whether the adoption of the resolution was procedurally proper.