The BALTIMORE LIFE INSURANCE
COMPANY and Life of Maryland

v.

SPRING GARDEN TOWNSHIP
and Sharon Kraus, Fiscal
Officer, Appellants.

Commonwealth Court of Pennsylvania.

Argued April 7, 1997.

Decided Aug. 21, 1997.

David W. Bupp, York, for appellants.

Robert B. Hoffman, Harrisburg, for appellees.

Before McGINLEY and PELLEGRINI,
JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Spring Garden Township and Sharon Kraus, the Township's Fiscal Officer (collectively, Township) appeal from an order of the Court of Common Pleas of York County (trial court) which found that The Baltimore Life Insurance Company and Life of Maryland (collectively, Insurance Companies) were not liable for payment of business privilege taxes to the Township.

The facts, as stipulated by the parties, are as follows. The Insurance Companies are licensed insurers within the Commonwealth and, as such, are under the regulatory supervision of the Pennsylvania Insurance Department and must comply with Pennsylvania insurance laws, as applicable to them. The Insurance Companies maintain an office within the Township where they employ various insurance agents who market, sell and service insurance policies on their behalf. The Insurance Companies conduct no business operations and generate no income at that location from any source other than the premiums received from the sale of insurance policies.

The Township enacted an ordinance which imposed a business privilege tax of one and one-half mills on the gross receipts of every person engaged in business in the Township. The ordinance was enacted under the authority granted to the Township by The Local Tax Enabling Act (LTEA), Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924.

On April 25, 1994, the Insurance Companies filed, under protest, business privilege tax returns for the years 1992 and 1993. The forms required the taxpayer to state the "gross volume of business" as the measure on which the tax is assessed. The Insurance Companies' "gross volume of business" used in those forms was the gross insurance premiums received by them during the particular tax year and attributable to its employee agents operating out of the office located in the Township. By letter dated June 9, 1994, the Township notified the Insurance Companies that it had determined that they were

liable to pay mercantile and/or business privilege taxes for the tax years 1992, 1993 and 1994.

The Insurance Companies filed a petition for review with the trial court appealing the Township's determination. The trial court determined that the Township's business privilege tax was not preempted by state regulation of insurers. The trial court determined that the Township's business privilege tax duplicated the Pennsylvania gross premiums tax and was therefore preempted by the LTEA. The Township now appeals to this Court.

The sole issue raised by the Township on appeal is whether the trial court erred in determining that the Township's business privilege tax was preempted by the LTEA. Section 2 of the LTEA, 53 P.S. § 6902, authorizes municipalities to "levy, assess and collect ... such taxes as they shall determine on person, transactions, occupations, privileges, subjects and personal property within the limits of such political subdivision...." A municipality does not have the authority to "levy, assess and collect or provide for the levying, assessment and collection of any tax ... on a privilege, transaction, subject, occupation or personal property which is now or does hereafter become subject to a State tax or license fee ..." Section 2(1) of the LTEA, 53 P.S. § 6902(1).

The Commonwealth imposes an insurance premiums tax on every insurance company transacting business in the Commonwealth "at a rate of two per cent of the gross premiums received from business done within this Commonwealth during each calendar year...." Section 902 of the Tax Reform Code of 1971 (Code), P.L. 6, as amended, 72 P.S. § 7902.[1]

In determining whether a local tax duplicates a state tax and results in double taxation, our Supreme Court has stated:

the operation or incidence of the two taxes is controlling as against mere differences in terminology from time to time employed in describing taxes in various cases. The incidence of the tax embraces the subject matter thereof and, more important, the measure of the tax, i.e., the base or yardstick by which the tax is applied. If these elements inherent in every tax are kept in mind, the incidence of the two taxes may or may not be duplicative.

*Commonwealth v. National Biscuit Co.*, 390 Pa. 642, 652, 136 A.2d 821, 825–26 (1957), *appeal dismissed*, 357 U.S. 571, 78 S.Ct. 1383, 2 L.Ed.2d 1547 (1958).

The Township contends that because the subjects of the Commonwealth tax and the Township tax are not the same, the Township tax does not duplicate the Commonwealth tax. The Township argues that the subject of the Commonwealth tax is the amount of gross premiums received by an insurance company as a result of business done within the Commonwealth while the subject of the Township tax is only the amount of income received by the Insurance Companies as a result of business done within the Township. The Township further argues that the subjects of the two taxes are not the same as the Township is not seeking to tax the Insurance Companies' income generated outside the Township.

In *Pocono Downs, Inc. v. Catasauqua Area School District*, 669 A.2d 500 (Pa. Cmwlth.1996), the school district enacted a resolution which created an off-track betting wagering tax on a patron's privilege of placing wagers in the amount of 1% of each wager at an off-track betting establishment within the school district's jurisdiction. On appeal, the school district argued, *inter alia*, that the local tax did not a duplicate a state tax because, although the state imposed a gross wager tax on off-track betting operators based on overall volume of business, the local tax only taxed each specific wager. This Court rejected the school district's argument stating:

That the state taxes a percentage of aggregate wagers and Catasauqua seeks to tax a percentage of each individual wager is a distinction without relevance, for the sum of the individual wagers at the OTB facility

---

1. In calendar year 1992, the Insurance Companies paid the Commonwealth of Pennsylvania a total of $573,786 in gross premiums taxes. In the calendar year 1993, the Insurance Companies paid the Commonwealth of Pennsylvania a total of $580,389 in gross premiums taxes.

is the aggregate of those wagers. Were we to give effect to distinctions such as that, Section 2(1) of the LTEA would essentially be rendered meaningless.

*Id.* at 503. Based on the reasoning of *Pocono Downs*, we reject the Township's argument that its business privilege tax is valid under the LTEA as it is merely taxing a portion of the Insurance Companies' gross premiums.

The tax forms utilized by the Township require the taxpayer to state the "gross volume of business" as the measure on which the tax is assessed. The parties have stipulated that the Insurance Companies generate no income within the Township other than the premiums received from the sale of insurance policies. Thus, for purposes of the Township's business privilege tax, the Insurance Companies' "gross volume of business" is measured by the amount of premiums received. The Township's business privilege tax imposes a tax on the same subject as does the Commonwealth's gross premiums tax and both taxes are measured by the same yardstick. Therefore, under the standard set forth in *National Biscuit,* the Township's business privilege tax duplicates the Commonwealth's tax and is preempted by the LTEA.

Accordingly, the order of the trial court is affirmed.

### ORDER

AND NOW, this 21st day of August, 1997, the order of the Court of Common Pleas of York County in the above-captioned matter is hereby affirmed.