IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lora Jean Williams; Gregory J. Smith; : 
CVP Management, Inc. d/b/a or t/a : 
City View Pizza; John's Roast Pork, Inc. : 
f/k/a John's Roast Pork; Metro Beverage : 
of Philadelphia, Inc. d/b/a or t/a Metro : 
Beverage; Day's Beverages, Inc. d/b/a or : 
t/a Day's Beverages; American Beverage : 
Association; Pennsylvania Beverage : 
Association; Philadelphia Beverage : 
Association; and Pennsylvania Food : 
Merchants Association, : 
 : 
                  Appellants : 
 : 
             v. : No. 2077 C.D. 2016
 : No. 2078 C.D. 2016
City of Philadelphia and Frank Breslin, : Argued: April 5, 2017
in His Official Capacity as Commissioner : 
of the Philadelphia Department of Revenue : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE JULIA K. HEARTHWAY, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge

OPINION BY JUDGE WOJCIK            FILED: June 14, 2017


       Lora Jean Williams, *et al.* (Objectors) appeal the orders of the Philadelphia County Court of Common Pleas (trial court) sustaining the preliminary objections of the City of Philadelphia and Frank Breslin, Commissioner of the Philadelphia Department of Revenue (Department) (collectively, City) and dismissing Objectors' complaint regarding the validity of

the Philadelphia Beverage Tax (PBT), and denying Objectors' petition for a special injunction.[1] We affirm.

In June 2016, the City enacted Ordinance No. 160176. In Section 1, the City amended the Philadelphia Code, imposing the PBT effective January 1, 2017, to be paid quarterly. Phila. Code §19-4103(1); §19-4106(1). The PBT applies broadly to "sugar-sweetened beverages," which are defined as "[a]ny non-alcoholic beverage that lists as an ingredient" either "any form of caloric sugar-based sweetener" or "any form of artificial sugar substitute," and "[a]ny non-alcoholic syrup or other concentrate that is intended to be used in the preparation of a beverage and that lists" either of the foregoing sweeteners as an ingredient. Phila. Code §19-4101(3)(a), (b). The PBT provides the following as examples of "sugar-sweetened beverages": "soda; non-100% fruit drinks; sports drinks; flavored water; energy drinks; pre-sweetened coffee or tea; and non-alcoholic beverages intended to be mixed into an alcoholic drink." Phila. Code §19-4101(3)(d). The PBT specifically excludes: (1) baby formula; (2) "medical food" as defined under the Orphan Drug Act;[2] (3) any product that is milk by more than 50% of volume; (4) any product that is fresh fruit, vegetable, or a combination more than 50% of volume; (5) unsweetened drinks to which sweetener can be added at the point of sale by the purchaser or seller; and (6) any syrup or other concentrate that the purchaser combines with other ingredients to create a beverage. Phila. Code §19-4101(3)(c).

---

[1] As the trial court explained, Objectors "are consumers, retailers, distributors and trade associations who allege injury from the PBT when implemented." Trial Court 12/19/16 Opinion at 2.

[2] 21 U.S.C. §§360aa—360ff-1.

The PBT defines "dealer" as "[a]ny person engaged in the business of selling sugar-sweetened beverages for retail sale within the City" and defines "distributor" as "[a]ny person who supplies sugar-sweetened beverages to a dealer." Phila. Code §19-4101(1), (2). The PBT states that "[n]o dealer may sell at retail, or hold out or display for sale at retail any sugar-sweetened beverage . . . unless . . . [t]he sugar-sweetened beverage was acquired by the dealer from a registered distributor; and . . . [t]he dealer has complied with the notification requirements[3] . . . and received confirmation from the registered distributor of such notification, as well as confirmation that the distributor is a registered distributor . . . ." Phila. Code §19-4102(1).

The PBT imposes a 1.5¢ per fluid ounce tax, generally payable by a distributor, "upon each of the following: the supply of any sugar-sweetened beverage to a dealer; the acquisition of any sugar-sweetened beverage by a dealer;

---

[3] Section 19-4104 of the Philadelphia Code states, in relevant part:

(1) [N]o dealer shall accept any sugar-sweetened beverage from a registered distributor, for purpose of holding out for retail sale in the City such sugar-sweetened beverage or any beverage produced therefrom, without first notifying the registered distributor that such dealer is a dealer subject to this Chapter. Notice shall be provided in the form of a Commonwealth of Pennsylvania sale for purpose of resale exemption certificate, so long as such certificate clearly indicates that the dealer is located in [the City]; or in such other form as the Department may provide.

(2) Upon receipt of notification pursuant to subsection (1) above, no registered distributor shall supply any sugar-sweetened beverage to a dealer without providing to the dealer, contemporaneously, (i) confirmation of notification; and (ii) a receipt detailing the amount of sugar-sweetened beverage supplied in the transaction and the amount of tax owing on such transaction; all in form satisfactory to the Department.

the delivery to a dealer in the City of any sugar-sweetened beverage; and the transport of any sugar-sweetened beverage into the City by a dealer." Phila. Code §19-4103(1), (2)(a). "The tax is imposed only when the supply, acquisition, delivery or transport is for the purpose of the dealer's holding out for retail sale within the City the sugar-sweetened beverage or any beverage produced therefrom." Phila. Code §19-4103(1). The PBT is also imposed upon "the per ounce of syrup or other concentrate that yields [1.5¢] per fluid ounce on the resulting beverage, prepared to the manufacturer's specifications." Phila. Code §19-4103(2)(b).[4]

"The tax shall be paid to the City by the registered distributor; and the dealer shall not be liable to the City for payment of the tax; so long as the registered distributor has received from the dealer notification . . . that the recipient is a dealer." Phila. Code §19-4105(1). However, "a dealer who fails to provide the notification [of dealer status]; and a dealer who sells at retail, or holds out or displays for sale at retail, any sugar-sweetened beverage in violation of §19-4102(1), shall be liable to the City for payment of any tax owing under this Chapter . . . ." Phila. Code §19-4105(2).

Moreover, "[w]here a dealer is also a registered distributor, no additional tax shall be owing on the supply of any sugar-sweetened beverage by such dealer/distributor to another dealer if the tax already has been imposed on the supply or delivery of the beverage to the dealer/distributor or the acquisition of the beverage by the dealer/distributor." Phila. Code §19-4105(3). Nevertheless, "[i]n

---

[4] However, "[u]pon a determination that the application of these rates to any particular product is unfair or unreasonable, the Department is authorized to issue regulations imposing the tax at an alternate rate on that particular product, to approximate as closely as possible the rate [of 1.5¢ per fluid ounce]." Phila. Code §19-4103(2)(b).

4

the event that a court of competent jurisdiction rules in a decision from which no further appeal lies that any portion of this Chapter cannot be applied to a distributor . . . then any dealer that holds out for retail sale in the City sugar-sweetened beverages . . . shall be liable to the City for the tax on those sugar-sweetened beverages." Phila. Code §19-4105(4).

The Ordinance further provides that "a violation of §19-4102(1) (sale of product purchased from other than a registered distributor or without proper notification to a registered distributor) shall constitute a Class II Offense . . . and each separate sale, transaction or delivery shall constitute a separate offense," but that "the Department may grant a full or partial waiver to a dealer from the provisions of §19-4102(1)" "[u]pon a showing of extraordinary circumstances, where distribution channels would make purchase of sugar-sweetened beverage from a registered distributor substantially impracticable . . . ." Phila. Code §§19-4107(1), 19-4108(1).

In September 2016, Objectors filed the instant complaint in the trial court seeking declaratory and injunctive relief. In Count I, Objectors assert that the City's authority to enact the PBT under the statute commonly referred to as the Sterling Act[5] is expressly preempted by Section 202(a) of the Pennsylvania Tax

---

[5] Act of August 5, 1932, Ex.Sess., P.L. 45, *as amended*, 53 P.S. §15971-15973. Section 1(a) of the Sterling Act states, in relevant part:

> [T]he council of any city of the first class shall have the authority by ordinance, for general revenue purposes, to levy, assess and collect, or provide for the levying, assessment and collection of, such taxes on persons, transactions, occupations, privileges, subjects and personal property, within the limits of such city of the first class as it shall determine, except that such council shall not have authority to levy, assess and collect, or provide for the levying, assessment and collection of, any tax on a privilege,

**(Footnote continued on next page…)**

Reform Code of 1971 (Tax Code)[6] imposing a tax on the retail sale of "soft drinks" (Sales Tax) because the Sterling Act precludes the imposition of a tax on the same subject of the state tax. In Count II, Objectors contend that the PBT is implicitly

---

**(continued…)**

> transaction, subject or occupation, or on personal property, which is now or may hereafter become subject to a State tax or license fee.

53 P.S. §15971.

[6] Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §7202(a). Section 202(a) provides, in pertinent part, that "[t]here is hereby imposed upon each separate sale at retail of tangible personal property or services . . . within this Commonwealth a tax of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth . . . ." In turn, Section 201 defines "tangible personal property" as including "soft drinks," and "soft drinks" are defined as:

> All nonalcoholic beverages, whether carbonated or not, such as soda water, ginger ale, coca cola, lime cola, pepsi cola, Dr. Pepper, fruit juice when plain or carbonated water, flavoring or syrup is added, carbonated water, orangeade, lemonade, root beer or any and all preparations, commonly referred to as "soft drinks," of whatsoever kind, and are further described as including any and all beverages, commonly referred to as "soft drinks," which are made with or without the use of any syrup. The term "soft drinks" shall not include natural fruit or vegetable juices or their concentrates, or non-carbonated fruit juice drinks containing not less than twenty-five per cent by volume of natural fruit juices or of fruit juice which has been reconstituted to its original state, or natural concentrated fruit or vegetable juices reconstituted to their original state, whether any of the foregoing natural juices are frozen or unfrozen, sweetened or unsweetened, seasoned with salt or spice or unseasoned, nor shall the term "soft drinks" include coffee, coffee substitutes, tea, cocoa, natural fluid milk or non-carbonated drinks made from milk derivatives.

72 P.S. §7201(a), (m).

6

preempted because it conflicts with Sections 201(k)(8) of the Tax Code[7] precluding a tax on the resale of "soft drinks," and 202(a) by obstructing the Commonwealth's collection of the tax and reducing the amount of tax collected. In Count III, Objectors submit that the PBT is implicitly preempted because it conflicts with Section 2013(a) of the federal Food Stamp Act,[8] the federal regulations related thereto,[9] and Section 204(46) of the Tax Code[10] prohibiting the imposition of a tax on items purchased with food stamps. In Counts IV through VII, Objectors also claim that the PBT violates the Uniformity Clause of Article 8, Section 1 of the

---

[7] 72 P.S. §7201(k)(8). Section 201(k)(8) states, in pertinent part, that "[t]he term 'sale at retail' shall not include . . . any such transfer of tangible personal property or rendition of services for the purpose of resale . . . ."

[8] 7 U.S.C. §2013(a). Section 2013(a) states, in relevant part:

> [T]he Secretary [of the Department of Agriculture (USDA)] is authorized to formulate and administer a supplemental nutrition assistance program [(SNAP)] under which, at the request of the State agency, eligible households within the State shall be provided an opportunity to obtain a more nutritious diet through the issuance to them of an allotment, except that a State may not participate in the [SNAP] if the Secretary determines that State or local sales taxes are collected within that State on purchases of food made with benefits issued under this chapter.

[9] *See* 7 C.F.R. §272.1(b)(1), (2) ("A State shall not participate in the Food Stamp Program if State or local sales taxes or other taxes or fees, including but not limited to excise taxes, are collected within the State on purchases made with food stamp coupons. . . . State and/or local law shall not permit the imposition of tax on food paid for with coupons. [The USDA's Food and Nutrition Service] may terminate the issuance of coupons and disallow administrative funds otherwise payable . . . in any State where such taxes are charged.").

[10] 72 P.S. §7204(46). Section 204(46) states that "[t]he tax imposed by section 202 shall not be imposed upon . . . [t]he sale at retail or use of tangible personal property purchased in accordance with the Food Stamp Act . . . ."

Pennsylvania Constitution[11] because it is non-uniform and creates unequal burdens at the retail price and distributor levels; creates an unreasonable class of distributor taxpayers and imposes an unequal burden across the class; is non-uniform and creates an unequal burden across a class of retailers; and is non-uniform and creates unequal burdens across the class of consumers.[12]

The City filed preliminary objections to the complaint, alleging that: (1) the Sterling Act expressly authorizes and does not preempt the PBT; (2) the PBT does not conflict with the Tax Code regarding retail sales; (3) the PBT does not conflict with the prohibition on collecting tax on purchases made with federal supplemental nutrition assistance program (SNAP) benefits; (4) the trial court was without jurisdiction to consider the SNAP benefits claim because it was a question for the Secretary of the Department of Agriculture (USDA); and (5) Objectors fail to state a claim that the PBT violates the Uniformity Clause.

In December 2016, the trial court issued an order and opinion disposing of the City's preliminary objections. The trial court first sustained the preliminary objections to Counts I and II of the complaint and dismissed those counts, holding that the PBT is expressly authorized by the Sterling Act and is not duplicative of the Sales Tax so it is not expressly or impliedly preempted. The court stated that "[t]he purpose of the Sterling Act is to prohibit double-taxation

_____

[11] Pa. Const. art. VIII, §1. Section 1 states that "[a]ll taxes shall be uniform, upon the same class of subjects, within the territorial limits of the authority levying the tax and shall be levied and collected under general laws."

[12] Objectors also filed an Emergency Application for the Exercise of King's Bench Powers that the Supreme Court denied on November 2, 2016, at No. 148 EM 2016. Likewise, the Supreme Court denied the City's Unopposed Application for Extraordinary Relief or the Exercise of King's Bench Powers on February 13, 2017, at No. 2 EM 2017.

where two governmental units, the state and its political subdivision, are seeking revenue from a tax or license fee on the same base. However, merely because a business is taxed on a certain aspect of its operations by the Commonwealth, the Sterling Act does not preclude a tax by a political subdivision on a different aspect of its operations." Trial Court 12/19/16 Opinion at 5 (footnote omitted). The court explicated:

> In determining whether a tax duplicates another tax and results in double taxation, the incidence of the two taxes is controlling. The incidence of tax embraces the subject matter thereof and more importantly, the measure of the tax, i.e. the base or yardstick by which the tax is applied. If these elements inherent in every tax are kept in mind, the incidence of the two taxes may or may not be duplicative. Applying this test to the instant matter, this court finds as a matter of law that the PBT is not duplicative of the Commonwealth's Sale and Use Tax and is therefore not preempted. This conclusion is not only supported by the language of the PBT, but also by the longstanding legal precedent addressing duplication.

*Id.* at 5-6.

The court noted that "[t]he PBT is a tax on the distribution of [sugar-sweetened beverages] on a per ounce basis and legal liability to pay the tax remains on distributors and, in certain instances, dealers," while "[t]he Commonwealth's [Sales Tax] is a 6% tax on the 'sale at retail of tangible property or services'" which "is applied to the purchase price of retail sales of personal property and legal liability to pay the tax falls on the consumer." Trial Court 12/19/16 Opinion at 6 (footnote omitted). The court explained that "[t]he respective taxes apply to two different transactions, have two different measures and are paid by different taxpayers" because "[t]he subject of the PBT is a non-

retail, distribution level tax on [sugar-sweetened beverages];" it "is only triggered when the [sugar-sweetened beverages] are distributed by the distributor, irrespective of whether the dealer sells the product to the consumer;" and "[t]he tax is measured by the volume of fluid ounces of the [sugar-sweetened beverage] and is imposed on the distributor." *Id.* The court stated that, in contrast, "the Commonwealth's [Sales Tax] is imposed on a sale at the retail level, is measured by the purchase price of the retail sale and is paid by the consumer." The trial court rejected Objectors' assertion "that the incidence of the tax is the same because the PBT will cause the distributor to pass the economic burden of the tax onto the dealer who will then pass the economic burden to the consumer" because "the ultimate economic burden of the tax may be imposed upon the purchaser-consumer, but the legal incidence is on the distributor." *Id.* at 7, 8.

The trial court sustained the City's preliminary objection to Count III of the complaint and dismissed that count, holding that the PBT is not implicitly preempted by the Section 2013(a) of the federal Food Stamp Act, its regulations, and Section 204(46) of the Tax Code. The court stated:

> The scope of SNAP is limited to the "purchase [of] food *from retail food* stores." The PBT is not a sales tax on the consumer, but rather a tax on the distributor. [T]he incidence of taxation is assessed by examining the statute's intended taxpayer, and not the economic impact of the tax. Under the plain terms of the PBT, the tax is not collected upon "purchases" at "retail" made with food stamps, but only upon non-retail, distributor-level transactions. Since the PBT's incidence of taxation is not on the consumer and the tax is not paid using SNAP benefits, the PBT is not preempted.

Trial Court 12/19/16 Opinion at 9-10 (footnotes omitted and emphasis in original).

10

Finally, the trial court sustained the City's preliminary objections to Counts IV through VII and dismissed those counts, holding that the PBT does not violate the Uniformity Clause. The court noted that Objectors "allege that the PBT is not uniform because it falls on four different classes, soft drinks, distributors, retailers and consumers, on an unequal basis," and "that the PBT results in an enormous range of tax burdens across the classes subject to the tax because it imposes a flat tax per unit of volume regardless of the market price or wholesale price of the [sugar-sweetened beverage]." Trial Court 12/19/16 Opinion at 10. "However, [the court set forth,] the only classes created by the PBT are distributors and arguably [sugar-sweetened beverages] which are one and the same for purposes of this analysis," and that "[t]he consumer and retailer classes identified by [Objectors] are not classes created by the PBT and are, therefore, not subject to tax liability under the PBT." *Id.*

The court stated that "[t]he PBT's manner and measure of calculating the tax is uniformly applied to distributors" because "[t]he PBT levies a tax on per fluid ounce of [sugar-sweetened beverages] distributed in the City to dealers at a rate of 1.5 cents per ounce." *Id.* at 12-13. As a result, the court held that "all distributors are subject to the same tax calculation formula and therefore no disparate treatment exists within a distributor class in regard to the formula and rate of tax." *Id.* at 13. The court explained that the PBT "is not a property tax since the legal incidence of the tax is based on the privilege of distributing [sugar-sweetened beverages] in [the City]" so "it need not be assessed *ad valorum*" and it does not violate the Uniformity Clause. *Id.* at 13-14. Based on its dismissal of all counts of the complaint, the trial court also dismissed as moot Objectors' request

11

for a special injunction and Objectors filed the instant appeals of the trial court's orders.[13, 14]

# I.

Objectors first claim that the trial court erred in holding that the PBT is expressly authorized by the Sterling Act and erred in concluding that it is not expressly or impliedly preempted by state law. Specifically, Objectors assert that the incidence of the PBT is impermissibly duplicative of the Sales Tax imposed

---

[13] This Court *sua sponte* consolidated the appeals for disposition and granted Objectors' Application for Emergency Relief to expedite argument and disposition of the appeals.

[14] In reviewing a trial court's order sustaining "preliminary objections, the standard of review is *de novo* and the scope of review is plenary." *Keller v. Scranton City Treasurer*, 29 A.3d 436, 443 n.12 (Pa. Cmwlth. 2011). "In order to sustain such a preliminary objection, it must appear with certainty that the law will not permit recovery, and, where any doubt exists as to whether the preliminary objections should be sustained, that doubt should be resolved by a refusal to sustain it." *Muncy Creek Township Citizens Committee v. Shipman*, 573 A.2d 662, 663 (Pa. Cmwlth. 1990).

> Regarding the trial court's denial of a special injunction, this Court has stated:

> > The Pennsylvania Rules of Civil Procedure refer to 'preliminary injunction' and 'special injunction.' Pa. R.C.P. No. 1531. The terms are often used interchangeably because both remedies are commonly sought to preserve the status quo until final hearing. Goodrich–Amram 2d §1531(a)(1). The [instant] motion for 'preliminary injunction,' however, will be deemed a request for relief in the nature of a special injunction since it sought "relief which is auxiliary to the main relief requested in the complaint." *In re Franklin Township Board of Supervisors*, [379 A.2d 874, 879 (Pa. 1977)].

*East Stroudsburg University v. Hubbard*, 591 A.2d 1181, 1183 n.5 (Pa. Cmwlth. 1991). Our review of the trial court's order denying the injunction is highly deferential; it is limited to examining the record to determine if there were any apparently reasonable grounds for the court's action. *Warehime v. Warehime*, 860 A.2d 41, 46 (Pa. 2004).

under the Tax Code so it is not authorized under the Sterling Act. Objectors also contend that the PBT is preempted by the Tax Code because it subverts the exception in Section 201(k) relating to the resale of items at retail.

As the Pennsylvania Supreme Court has explained:

> The matter of preemption is rooted in the relationship between the constitutional provisions vesting the legislative power of the Commonwealth in the General Assembly, Article II, Section 1, and providing for local government, Article IX, Section 1. In providing for the general welfare of the Commonwealth's citizens, the General Assembly may choose to leave a subject open to control by local governmental bodies, it may enact laws of statewide application that simultaneously allow for local regulation, or local ordinances may be prohibited entirely.
>
> There is generally no difficulty of application where a statute explicitly removes a given subject from local control. Similarly, where some local regulation is permitted its outer bounds can usually be clearly determined; municipal ordinances are valid if they are not contradictory to or inconsistent with the statutory law. In such situations any questions are readily resolved because, almost by definition, the intention of the General Assembly is plain. Difficulties arise only when the legislative intent is not explicit but must be inferred.

*City of Philadelphia v. Clement & Muller, Inc.*, 715 A.2d 397, 398 (Pa. 1998).

As the Court further explicated:

> In *Department of Licenses and Inspections, Board of License and Inspection Review v. Weber*, [147 A.2d 326 (Pa. 1959)], this Court explained two of the three closely related forms of preemption as follows:
>
> > Of course, it is obvious that where a statute specifically declares it has planted the flag of preemption in a field, all ordinances on the subject die away as if they did not exist. It is also apparent

13

that, even if the statute is silent on supersession, but proclaims a course of regulation and control which brooks no municipal intervention, all ordinances touching the topic of exclusive control fade away into the limbo of 'innocuous desuetude.'

*Id.* at 327. In addition to those two forms of preemption, respectively "express" and "field preemption," there is also a third, "conflict preemption," which acts to preempt any local law that contradicts or contravenes state law. *See Mars Emergency Med. Servs. v. Township of Adams*, [740 A.2d 193, 195 (Pa. 1999)] (citing, *inter alia*, *W. Pennsylvania Rest. Ass'n v. Pittsburg*h, [77 A.2d 616, 619-20 (Pa. 1951)]).

*Nutter v. Dougherty*, 921 A.2d 44 (Pa. Cmwlth.), *aff'd*, 938 A.2d 401, 406 (Pa. 2007).[15]

---

[15] In *Nutter*, 921 A.2d at 59-60 n.6, this Court outlined cases in which local regulation was held to have been preempted by state statute:

> *See, e.g., Ortiz* [ *v. Commonwealth*, 681 A.2d 152 (Pa. 1996)] (holding that Philadelphia and Pittsburgh ordinances banning certain types of assault weapons within municipal boundaries were preempted by state law as the ordinances purported to regulate ownership, use, possession or transfer of certain firearms, or matters of statewide concern because ownership of firearms is constitutionally protected); [*Commonwealth v.*] *Wilsbach Distributors*[*, Inc.*, 519 A.2d 397 (Pa. 1986)] (noting that no other area of state exercise of police power is more plenary than in regulation and control of use and sale of alcoholic beverages and holding that local business privilege and mercantile tax ordinance imposing tax on importing distributor of malt and brewed beverages was preempted by Liquor Code, [Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§1-101 – 10-1001,] which regulates in plenary fashion every aspect of alcoholic beverage industry through Liquor Control Board, the designated arm of enforcement); [*City of Pittsburgh v.*] *Allegheny Valley Bank of Pittsburgh*[, 412 A.2d 1366 (Pa. 1980)] (holding local business privilege tax ordinance taxing bank revenue was preempted by state law as applied to state banks where the Banking Code of

**(Footnote continued on next page…)**

As stated above, Section 1(a) of the Sterling Act empowers the City "to levy, assess and collect . . . such taxes on . . . transactions, . . . privileges, subjects and personal property . . . as it shall determine except that [it] shall not have authority to levy, assess and collect . . . any tax on a privilege, transaction, subject . . . or on personal property, which is now or may hereafter become subject to a State tax . . . ." 53 P.S. §15971. Thus, "[u]nder the Sterling Act . . . the city has broad powers to levy taxes for revenue purposes." *Blauner's v. City of Philadelphia*, 198 A. 889, 891 (Pa. 1938). Nevertheless, the above-cited provision "was intended to prevent double taxation of the same thing; in other words, the city was instructed that it could not tax subjects taxed by the state. . . . If, therefore, the tax proposed to be collected pursuant to the [Sterling Act] results in such double

---

**(continued…)**

1965, Act of November 30, 1965, P.L. 847, *as amended*, 7 P.S. §§101–2204, and establishment of a Department of Banking to supervise activities of state banking institutions show legislative intent to exclusively occupy state banking field); *Harris–Walsh* [ *Inc. v. Dickson City Borough*, 216 A.2d 329 (Pa. 1966)] (holding local ordinance regulating within borough limits future mining of anthracite coal by strip mine method preempted by state law because legislature expressly retained exclusive jurisdiction over regulation of the anthracite strip mining industry through Department of Mines); and *Duff* [*v. Township of Northampton*, 532 A.2d 500 (Pa. Cmwlth. 1987), *aff'd*, 550 A.2d 1319 (Pa. 1988)] (holding that local ordinance making it illegal to hunt or kill game through use of bow and arrow or firearm or weapon from which shot or other object is discharged within area designated as township safety zone was preempted by the [former version of the Game and Wildlife Code, 34 Pa. C.S. §§101-2965], which indicated legislative intent to retain exclusive control over the regulation of hunting). In these cases the legislature provided clear intent to preempt the various fields in which it has legislated.

15

taxation, it is unauthorized and must be restrained." *Murray v. City of Philadelphia*, 71 A.2d 280, 284 (Pa. 1950).

In *Pocono Downs, Inc. v. Catasauqua Area School District*, 669 A.2d 500, 502 (Pa. Cmwlth. 1996), quoting *Commonwealth v. National Biscuit Co.*, 136 A.2d 821, 825-26 (Pa. 1957), *appeal dismissed*, 357 U.S. 571 (1958), this Court stated:

> In determining whether a tax duplicates another tax and results in double taxation prohibited to local taxing authorities, *the operation or incidence of the two taxes is controlling as against mere differences in terminology* from time to time employed in describing taxes in various cases. The incidence of a tax embraces *the subject matter thereof and, more important, the measure of the tax*, *i.e.*, the base or yardstick by which the tax is applied. If these elements inherent in every tax are kept in mind, the incidence of the two taxes may or may not be duplicative. [(Emphasis in original).]

However, a tax's "operation or incidence" refers to the substantive text of the ordinance and does not concern the post-tax economic actions of private actors in response to the imposition of the PBT. *See, e.g., Gurley v. Rhoden*, 421 U.S. 200, 204 (1975) (citations omitted) ("[T]he decision as to where the legal incidence of either tax falls is not determined by the fact that petitioner, by increasing his pump prices in the amounts of the taxes, shifted the economic burden of the taxes from himself to the purchaser-consumer. The Court has laid to rest doubts on that score . . . at least under taxing schemes, as here, where neither statute required petitioner to pass the tax on to the purchaser-consumer.").

As noted above, under Sections 19-4102(1) and 19-4105(1) of the Philadelphia Code, the PBT is paid by a distributor and a dealer is not liable so long as the dealer notifies the distributor, receives confirmation of that notification,

16

and receives notification that the distributor is a registered distributor.[16] Section 19-4105 outlines the circumstances under which a dealer may assume a distributor's PBT liability, but there is no provision in the Philadelphia Code that ever shifts liability for the PBT to the ultimate purchaser at retail.[17] Likewise, Example 2 of the Regulations, at page 19, explains that "[t]he tax is not a sales tax; the tax is imposed upon the supply of the [sugar-sweetened beverage] to the Dealer or the acquisition of the [sugar-sweetened beverage] by the Dealer, not upon the sale of [the sugar-sweetened beverage] by the Dealer to its customers." The subject matter of the tax, the non-retail distribution of sugar-sweetened beverages for sale at retail in the City, and the measure of the tax, per ounce of sugar-sweetened beverage, are distinct from the Sales Tax imposed under the Tax Code upon the retail sale of the sugar-sweetened beverage to the ultimate purchaser. Thus, the dissent's claim that the PBT is duplicative of the Sales Tax is incorrect.

Likewise, Objectors' claim that the PBT may be refunded if the sugar-sweetened beverage is not ultimately sold at retail is not correct. While Section 19-4107(1) states that "the Department may grant a full or partial waiver to a

---

[16] *See also* Section 301(a) of the Sugar-Sweetened Beverage Tax Regulations (Regulations) ("In general, [P]BT shall be paid to the City by the Registered Distributor; and the Dealer that acquires the [sugar-sweetened beverage] from the Registered Distributor shall not be liable to the City for payment of the tax as long as the Registered Distributor has received from the Dealer notification . . . that it is a Dealer.").

[17] In this regard, Section 301(b) of the Regulations states that "[w]here a Dealer is also a Registered Distributor, such Dealer is liable to the City for payment of [P]BT; no additional [P]BT shall be owing on the supply of any [sugar-sweetened beverage] by such Dealer/Distributor . . . ." Additionally, Section 302(b) states that "[a] Registered Dealer is any Dealer that elects to register as if it were a Distributor and agrees to assume all of the obligations of a Distributor with respect to the Dealer's acquisition of any [sugar-sweetened beverage], including payment of [P]BT to the Department."

17

dealer from the provisions of §19-4102(1)" "[u]pon a showing of extraordinary circumstances, where distribution channels would make purchase of sugar-sweetened beverage from a registered distributor substantially impracticable . . . ," there is no indication that the non-sale of a sugar-sweetened beverage is such an "extraordinary circumstance" warranting a refund of the PBT. Section 501(f) of the Regulations states:

> When a Taxpayer discovers an overpayment of tax, the Taxpayer shall file an amended return to claim a credit or, if the Taxpayer is no longer required to file a [P]BT return, the Taxpayer will be entitled to claim a refund of the overpaid [P]BT. A credit or refund may be claimed only if the later filed [sugar-sweetened beverage] return or refund claim is filed by the Taxpayer no later than three (3) years after the later of the date of payment of the overpaid [P]BT or the due date for such payment.[18]

---

[18] Example 11 of the Regulations, at page 32, sets forth, with respect to a refund of the tax already paid on 15 cases of sugar-sweetened beverages that are not ultimately sold at retail in the City:

> As long as [the Dealer] has documented that 15 cases of [sugar-sweetened beverage] intended for sale in [the City] actually were sold outside the City, if [the Dealer] has sufficient non-[City] inventory, [the Dealer] may elect to replenish its [City] inventory with 15 cases of [sugar-sweetened beverage] from its non-[City] inventory (on which no [P]BT was paid). In the extraordinary situation where [the Dealer] will not be placing any future [City] orders for that [sugar-sweetened beverage] (either because it will cease to carry that [sugar-sweetened beverage] or because it no longer will have a [City] location), [the Dealer] can notify the Distributor of the change in the retail sale location and the Distributor can claim a credit or refund, as appropriate, in accordance with Section 501([f]) of these regulations. Any recovery by [the Dealer] is entirely at the discretion of the Distributor.

18

As outlined above, the PBT taxes non-retail distribution transactions and not retail sales to a consumer. As a result, the PBT does not violate the duplicative-tax prohibition in the Sterling Act or encroach upon a field preempted by the Sales Tax because the taxes do not share the same incidence and merely have related subjects. As the Supreme Court has explained, "in several cases the United States Supreme Court has upheld taxes on the use of personal property as a form of excise tax.[19]" *John Wanamaker v. School District of Philadelphia*, 274

---

[19] "The use and ownership of property are distinct and separate. The right to use property is just one of the several rights incident to ownership[.]" *John Wanamaker v. School District of Philadelphia*, 274 A.2d 524, 526 (Pa. 1971) (citations omitted). Regarding taxes imposed upon the use of property, this Court has stated:

> While the distinctions between property taxes, income taxes, franchise taxes, excise taxes and privilege taxes have not been honed to a very sharp edge by the courts, there are certain guidelines. It is true that the characterization of the nature of the tax is not controlling but it is also true that such characterization is entitled to much weight. Here the legislature has clearly categorized this tax as an excise tax. One standard for distinguishing a property tax from a franchise or excise tax is the method adopted for imposing the tax and for fixing the amount thereof.

*Philadelphia Saving Fund Society v. Commonwealth*, 467 A.2d 420, 423 (Pa. Cmwlth. 1983) (citations omitted). "A tax is an 'excise' or 'transfer' tax if the government is taxing 'a particular use or enjoyment of property or the shifting from one to another of any power or privilege incidental to the ownership or enjoyment of property.' *Fernandez v. Wiener*, 326 U.S. 340, 352 [(1945)]." *In re Estate of Hambleton*, 335 P.3d 398, 403-04 (Wash. 2014). *See also John Wanamaker*, 274 A.2d at 527 ("While economically the incidence of the tax is on the property itself, its legal incidence is on the privilege of using, making it a true excise tax."); *Blair Candy Company, Inc. v. Altoona Area School District*, 613 A.2d 159, 161-62 (Pa. Cmwlth. 1992) (holding that a cigarette tax was an excise tax, and not a sales tax, so that the income received from cigarette stamping was subject to a local mercantile tax and was not subject to exemption under the Tax Code prohibiting duplication of taxes because the cigarette tax was imposed at specific rate on specific item, was named an excise tax, was payable by a licensed tax stamp agency, and the income received from stamping was compensation for affixing such stamps).
**(Footnote continued on next page…)**

As stated above, Section 19-4103(1) of the Philadelphia Code provides that the PBT "is imposed only when the supply, acquisition, delivery [of a sugar-sweetened beverage to a dealer] or transport [of a sugar-sweetened beverage into the City by a dealer] is for the purpose of the dealer's holding out for retail sale within the City the sugar-sweetened beverage or any beverage produced therefrom." Section 19-4103(2) imposes the PBT at a rate of 1.5¢ per fluid ounce of sugar-sweetened beverage or upon "the per ounce of syrup or other concentrate that yields [1.5¢] per fluid ounce on the resulting beverage, prepared to the manufacturer's specifications." Because the PBT taxes "a particular use or enjoyment" of sugar-sweetened beverages or "the shifting from one to another of any power or privilege incidental to the ownership or enjoyment of" sugar-sweetened beverages, it is an excise tax.

Similarly, Section 11-19-2 of the West Virginia Code imposes an excise tax on soft drinks based on volume stating, in relevant part:

> [A]n excise tax is hereby levied and imposed . . . upon the sale, use, handling or distribution of all bottled soft drinks and all soft drink syrups, whether manufactured within or without this State, as follows:
>
> (1) On each bottled soft drink, a tax of one cent on each sixteen and nine-tenths fluid ounces, or fraction thereof, or on each one-half liter, or fraction thereof contained therein.
>
> (2) On each gallon of soft drink syrup, a tax of eighty cents, and in like ratio on each part gallon thereof, or on each four liters of soft drink syrup a tax of eighty-four cents, and in like ratio on each part four liters thereof.
>
> (3) On each ounce by weight of dry mixture or fraction thereof used for making soft drinks, a tax of one cent or on each 28.35 grams, or fraction thereof, a tax of one cent.
>
> Any person manufacturing or producing within this State any bottled soft drink or soft drink syrup for sale within this State and any distributor, wholesale dealer or retail dealer or any other person who is the original consignee of any bottled soft drink or soft drink syrup manufactured or produced outside this State, or who brings such drinks or syrups into this State, shall be liable for the excise tax hereby imposed. The excise tax hereby imposed

**(Footnote continued on next page…)**

A.2d 524, 526 (Pa. 1971) (citations omitted). Based on this precedent, the Court held that the City's business use and occupancy tax imposed on the use or occupancy of real estate for commercial or industrial activity was not an impermissible direct tax on the real estate because the tax liability flowed from the voluntary election by the owner to use the real property in a certain manner. *Id.* at 526-28.[20]

In *Blauner's, Inc.*, 198 A. at 891, the Supreme Court held that a City ordinance imposing a sales tax did not "invade the field pre-empted by the Commonwealth" under a capital stock tax because "the ordinance taxes neither the

---

**(continued…)**

> shall not be collected more than once in respect to any bottled soft drink or soft drink syrup manufactured, sold, used or distributed in this State.

W. Va. Code, § 11-19-2.

[20] Objectors' reliance on *United Tavern Owners of Philadelphia v. School District of Philadelphia*, 272 A.2d 868 (Pa. 1971), is misplaced because that plurality opinion has never been adopted by a majority of the Supreme Court and later cases invalidating local alcohol taxation rested on field preemption and not an express preemption by the Tax Code. *See, e.g., Clement & Muller, Inc.*, 715 A.2d at 398. Objectors' reliance on *Murray*, 71 A.2d at 284, is also misplaced because, as stated by this Court, in *Murray* the City "passed a net income tax which purported to tax dividend income in the hands of stockholders" which was "a tax on the property itself, and since the dividends as property had already been taxed while in the hands of the corporation by the state capital stock tax . . . the city tax [was] a second tax on the same property." *Man, Levy & Nogi, Inc. v. School District of the City of Scranton*, 375 A.2d 832, 835 (Pa. Cmwlth. 1977). As outlined above, the PBT and the Sales Tax are imposed on differing subjects and are measured on differing bases. *See id.* ("As already stated, the local and state taxes under consideration in the instant case are privilege taxes levied upon separate and distinct business privileges, and the attempted analogy to property taxes cannot control."). Likewise, Objectors' reliance on *Pocono Downs, Inc.*, 669 A.2d at 503, is misplaced because in that case, "both taxes [were] on the same subject matter, patrons' wagers, and [were] measured on the same base, the amount of wagers."

21

same subject nor the same person as the State taxes referred to." The Court also held that the ordinance did not impermissibly duplicate the state net income tax:

> We have held an income tax to be a property tax, and the corporate net income tax specifically to be such[.] The sales tax and the net income tax vary widely. The former is an excise tax on sales and services; the latter is a property tax upon income from any source. The former is a tax on "transactions," whereas the latter is a tax on "property." The persons taxed are wholly different. The sales tax is imposed upon the purchaser or consumer; the net income tax is on the corporation receiving the income.

*Id.* (citations omitted).

The Court also held that the ordinance did not invade the field preempted by the state mercantile license tax, stating:

> The state mercantile license tax and the city sales tax are similar in that they are both excises, but the similarity goes no further. The city tax is a levy on sales, the state tax is a levy imposed for the privilege of conducting a particular kind of business, albeit the amount of the tax is measured by gross sales. The sales tax is imposed upon the transaction whereby the property is acquired; the mercantile tax is an imposition for the privilege of doing business.

*Id.* at 892. The Court concluded "that the city sales tax ordinance and the Mercantile License Tax Act do not tax the same subject, nor the same person, and that the field covered by the ordinance had not been preempted by the mercantile license tax." *Id.*[21] Correspondingly, in this case, the PBT and the Sales Tax do not

[21] *See also Fish v. Township of Lower Merion*, 128 A.3d 764, 770-71 (Pa. 2015) (holding that a township's imposition of a business privilege tax on businesses whose sole income consisted of rent payments on leased real property was not barred by Section 301.1(f)(1) of the Local Tax Enabling Act (LTEA), Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §6924.301.1(f)(1), limiting its authority to "levy, assess, or collect . . . any tax on . . . leases or **(Footnote continued on next page…)**

22

tax the same subject, or the same person, and the field covered by the PBT has not been preempted by the Sales Tax.

Finally, Objectors' argument that the exception of "transfer[s] . . . for the purpose of resale" from the application of the Sales Tax in Section 201(k) of the Tax Code somehow limits the City's authority to enact the PBT under the Sterling Act is unpersuasive.[22]  In *Provident Mutual Life Insurance Company v. Tax Review Board*, 750 A.2d 942 (Pa. Cmwlth. 2000), Provident Life Insurance Company (Provident) merged with Covenant Life Insurance Company (Covenant) which held mortgages on a number of properties in the City.  After Provident subsequently acquired the properties by deed in lieu of foreclosure, the City assessed a realty transfer tax pursuant to Section 19-4103(1) of the Philadelphia

---

**(continued…)**

lease transactions[.];" *School District of Scranton v. Dale & Dale Design & Development, Inc.*, 741 A.2d 186, 189 (Pa. 1999) (holding that a school district's imposition of a business privilege tax on a contractor's receipts from residential construction was not barred by Section 301.1(f)(11) of the LTEA, 53 P.S. §6924.301.1(f)(11), limiting its authority to "levy, assess, or collect a tax on the construction of or improvement to residential dwellings . . . .").

[22] Similarly, we also reject Objectors' assertion that the imposition of the PBT constitutes impermissible "tax pyramiding."  *See* 71 Am. Jur. 2d State and Local Taxation §33 (2017) ("The view is also supported by considerable authority that in accordance with the qualification sometimes made in defining double taxation in the invidious sense, that the two taxes must be imposed with respect to the same taxable subject, the exaction of two or more excise taxes with respect to the same person or property is not invalid as double taxation where the privileges or activities taxed are clearly separable and distinct.") (footnotes omitted).  *See also Blair Candy Co., Inc.*, 613 A.2d at 161 ("The cigarette tax is an *excise tax* imposed at the specific rate of one and fifty-five hundredths of a cent per cigarette.  Therefore, the cigarette tax is a *specific* tax, imposed at a stated dollar amount per item.  By contrast, the Pennsylvania sales tax as set forth in Article II of the [Tax Code] is an *ad valorem* tax imposed on each separate sale at retail of tangible personal property or services at a rate of six percent of the purchase price to be collected by the vendor.") (emphasis in original).

23

Code.[23]   Provident sought a refund of the tax, asserting that the transfers were exempt under Section 19-4105(14) of the Philadelphia Code,[24] but the City's Tax Review Board found that the tax exclusion did not survive Provident's merger with Covenant and the exclusion was not available to Provident.   On appeal, the trial court affirmed.

On further appeal to this Court, Provident argued, *inter alia*, that the City did not have the authority to impose the tax under Section 1301(b) of the Local Tax Reform Act[25] or the Sterling Act because the transfer of realty as in that

---

[23] Section 19-4103(1) of the Philadelphia Code states, in pertinent part, that "[e]very person who . . . accepts ownership of real estate situate within the City, shall be subject to pay for and in respect to the transaction or any part thereof . . . a tax based on the value of the real estate represented by such document . . . ."  In turn, Section 19-4102(14)(b) states, in relevant part, that "upon a deed in lieu of foreclosure . . . the actual monetary worth of the real estate as determined by adjusting the assessed value of the real estate, as determined by the Board of Revision of Taxes for City real estate tax purposes, for the common level ratio factor for the City . . . ."

[24] Section 19-4105(14) states, in pertinent part, that "[t]he tax imposed by Section 19-4103 shall not be imposed upon . . . [a] transfer . . . by a mortgagor to the original grantor holding the purchase money mortgage whether such a transfer is pursuant to a deed in lieu of a foreclosure or a transfer pursuant to a judicial sale."

[25] Act of December 13, 1988, P.L. 1121, 72 P.S. § 4750.1301(b).  Section 1301(b) states, in relevant part:

> (1) [T]he council of [the City] shall have the authority, by ordinance, for general revenue purposes, to levy, assess and collect or provide for the levying, assessment and collection of a tax upon a transfer of real property . . . within the geographical limits of [the City] . . . to the extent that the transactions are subject to the tax imposed by Article XI-C of the [Tax Code].

> (2) In addition, [the City] may impose a local real estate transfer tax upon additional classes or types of transactions and may establish standards to be used by the [City] to determine the

**(Footnote continued on next page…)**

24

case is specifically exempt from the state real estate transfer tax under Section 1102-C.3(16) of the Tax Code.[26] We rejected Provident' s arguments, explaining:

> The [trial] court addressed the City's authority to tax under the Sterling Act and did not find Provident's argument persuasive. The [trial] court noted that this Court previously addressed this issue. In *Equitable Assurance Soc. v. Murphy*, [621 A.2d 1078 (Pa. Cmwlth. 1993)], this Court held that the Sterling Act authorized the City to tax a transfer of stock in a real estate corporation when the real estate owned by the corporation was located within the City where the City had a real estate transfer tax in place. Although the present situation is not identical, it is similar insofar as the City has enacted a real estate transfer tax and has taxed a transfer of real estate within the City.

> Further, we cannot agree that because a particular transaction is mentioned but not specifically designated as taxable in the [Tax Code] that this means the City has no authority to tax the transaction under Section 1301(b)(2) of the [Local Tax Reform] Act. Section 1301(b)(2) provides that the City may impose a local real estate transfer tax upon additional classes or types of transactions if the real estate transfer tax is imposed pursuant to the Sterling Act. Section 1 of the Sterling Act provides that the City may tax transactions within the City if that transaction is not "subject to a State tax or license fee." 53 P.S. §15971(a).

---

**(continued…)**

> monetary value to be applied to a transaction for the purpose of taxation, if the tax was or is imposed by the [City] pursuant to the Sterling Act, or pursuant to this act.

[26] Added by the Act of July 2, 1986, P.L. 318, *as amended*, 72 P.S. §8102-C.3(16). Section 1102-C.3(16) states, in pertinent part, that "[t]he tax imposed by section 1102-C shall not be imposed upon . . . [a] transfer by a mortgagor to the holder of a bona fide mortgage in default in lieu of a foreclosure . . . ."

25

Here, this transaction is not subject to a state tax or license fee because this transaction, the transfer of property from a mortgagor to the holder of the mortgage through a deed in lieu of foreclosure, is specifically exempt from the state realty transfer tax as contained in the [Tax Code] as enacted by the General Assembly. Therefore, because this transaction is not subject to a state tax, the City may levy the Tax on this class of transaction, the conveyance of property through a deed in lieu of foreclosure, pursuant to the Sterling Act and in compliance with Section 1301(b)(2) of the Local Tax Reform Act. Further, the General Assembly did not explicitly state that a Tax on this transaction is prohibited. To the contrary, the General Assembly granted broad authority to the City to tax under the Local Tax Reform Act and the Sterling Act. The [trial] court properly rejected the proposition that the City exceeded its authority by assessing the Tax.

*Provident Mutual Life*, 750 A.2d at 946. Based on the foregoing, it is clear that the exception contained in Section 201(k) of the Tax Code does not limit the City's authority to enact the PBT under the Sterling Act.[27]

---

[27] Moreover, and quite importantly, as indicated above, Section 19-4104(1) of the Philadelphia Code provides, in pertinent part:

[N]o dealer shall accept any sugar-sweetened beverage from a registered distributor, for purpose of holding out for retail sale in the City such sugar-sweetened beverage or any beverage produced therefrom, without first notifying the registered distributor that such dealer is a dealer subject to this Chapter. *Notice shall be provided in the form of a Commonwealth of Pennsylvania sale for purpose of resale exemption certificate*, so long as such certificate clearly indicates that the dealer is located in [the City]; or in such other form as the Department may provide. (Emphasis added).

Thus, a dealer must first provide a Commonwealth sale for the purpose of resale exemption certificate before accepting a sugar-sweetened beverage for retail sale.

In sum, the trial court did not err in determining that the City was empowered to enact the PBT under the Sterling Act and Objectors' claims that the City's authority in this regard is explicitly or impliedly preempted by Commonwealth statutes are without merit. As a result, the trial court did not err in sustaining the City's preliminary objections to Counts I and II of the complaint and dismissing those counts.

## II.

Objectors next claim that the trial court erred in holding that the PBT is not implicitly preempted by the Section 2013(a) of the federal Food Stamp Act, its regulations, and Section 204(46) of the Tax Code, which preclude the imposition of a tax on items purchased at retail with food stamps. Objectors assert that the PBT's conflict with this state-law exemption jeopardizes the Commonwealth's eligibility to participate in the federal program and erodes the purchasing power of those Objectors who use food stamps to purchase groceries.

As stated above, Section 2013(a) of the Food Stamp Act states, in relevant part, that "States may not participate in [the program] if the Secretary determines that State or local sales taxes are collected within that State on purchases of food made with [program] benefits." 7 U.S.C. §2013(a). Likewise, Section 272.1(b) of the federal regulations provides:

> A State shall not participate in the Food Stamp Program if State or local sales taxes or other taxes or fees, including but not limited to excise taxes, are collected within the State on purchases made with food stamp coupons. . . . State and/or local law shall not permit the imposition of tax on food paid for with coupons. [The USDA's Food and Nutrition Service] may terminate the issuance of coupons and disallow administrative funds otherwise payable . . . in any State where such taxes are charged.

27

7 C.F.R. §272.1(b)(1), (2). To this end, the General Assembly enacted Section 204(46) of the Tax Code which prohibits the imposition of the Sales Tax under Section 202 on the sale of goods purchased with food stamps. 72 P.S. §§7202, 7204(46).

Section 2020(g) of the Food Stamp Act[28] empowers the federal government to enforce the foregoing provisions. Nevertheless, as a United States District Court has explained:

> A number of courts have recognized an implied private right of action to enforce provisions of the Food Stamp Act, but the defendants in all of these cases were public officials, and the plaintiffs were all individuals who had been denied Food Stamp benefits. *See, e.g., Victorian v. Miller*, 813 F.2d 718, 720–21, 724 n. 13 (5th Cir. 1987) (action against Texas Department of Human Services officials); *Haskins v. Stanton*, 794 F.2d 1273, 1274 (7th Cir. 1986) (holding indigent persons denied food stamp benefits had "a private right of action to

---

[28] *See* 7 U.S.C. §2020(g) ("If the Secretary determines, upon information received by the Secretary, investigation initiated by the Secretary, or investigation that the Secretary shall initiate upon receiving sufficient information evidencing a pattern of lack of compliance by a State agency of a type specified in this subsection, that in the administration of the [SNAP] there is a failure by a State agency without good cause to comply with any of the provisions of this chapter, the regulations issued pursuant to this chapter, the State plan of operation submitted pursuant to subsection (d) of this section, the State plan for automated data processing submitted pursuant to subsection (o)(2) of this section, or the requirements established pursuant to section 2032 of this title the Secretary shall immediately inform such State agency of such failure and shall allow the State agency a specified period of time for the correction of such failure. If the State agency does not correct such failure within that specified period, the Secretary may refer the matter to the Attorney General with a request that injunctive relief be sought to require compliance forthwith by the State agency and, upon suit by the Attorney General in an appropriate district court of the United States having jurisdiction of the geographic area in which the State agency is located and a showing that noncompliance has occurred, appropriate injunctive relief shall issue, and, whether or not the Secretary refers such matter to the Attorney General, the Secretary shall proceed to withhold from the State such funds authorized under sections 2025(a), 2025(c), and 2025(g) of this title as the Secretary determines to be appropriate, subject to administrative and judicial review under section 2023 of this title."),

enforce compliance with the Food Stamp Act by . . . state officials"); *Johnson v. Madigan*, [(N.D. Ga., Civ. A. No. 1:91–CV1412MHS, filed March 26, 1992), slip op. at 2-4] (action against Secretary of Agriculture and Commissioner of Georgia's Department of Human Resources); *Dubuque v. Yeutter*, 728 F. Supp. 303, 304-05 (D. Vt. 1989) (action against Secretary of the U.S. Department of Agriculture and the Commissioner of Vermont's Department of Social Welfare).

Plaintiff has not cited, and research has not disclosed, any case in which a court has found that a food stamp recipient has a private right of action under the Food Stamp Act against a retail food store participating in the Food Stamp Program.

*Posr v. City of New York*, (S.D.N.Y., No. 11 Civ 986 (PGG)), filed September 25, 2012), slip op. at 10.[29]

Objectors' claims in the instant matter are without merit because the federal statute and regulations only prohibit the imposition of a tax on retail purchase transactions, and not a tax on non-retail distribution transactions within the reach of the PBT. As outlined above, the PBT is never "collected" upon "purchases" at "retail," let alone transactions "made with [program] benefits;" the PBT is only collected from either distributors or dealers upon distribution transactions, and no recipient of program benefits is ever liable for the payment of the PBT. The fact that the PBT may be passed on to recipients through higher

---

[29] *See Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, 908 A.2d 875, 883-84 n.10 (Pa. 2006) (stating that the decision of an inferior federal court interpreting federal law should be treated as persuasive, but not binding, authority); *In re Dolph*, 215 B.R. 832, 835 (6th Cir. 1998) (explaining that although unpublished decisions are not binding precedent, they may be cited if persuasive, especially where there are no published decisions that will serve as well). *But cf. Delaware County v. Raymond T. Opdenaker & Sons*, 652 A.2d 434, 437 n.2 (Pa. Cmwlth. 1994), *appeal dismissed*, 669 A.2d 929 (Pa. 1995) (refusing to consider a memorandum opinion of a federal district court).

retail prices does not alter the incidence of the PBT nor transform it into a prohibited tax within the purview of Section 2013(a) of the Food Stamp Act, its regulations, or Section 204(46) of the Tax Code.

Moreover, the City has no responsibility for regulating either distributors or dealers with respect to the Food Stamp Act, *see* 7 U.S.C. §§2020, 2021 (outlining the federal and state responsibilities under the Food Stamp Act), and Objectors do not allege any special relationship between the City and the distributors and dealers upon whom the PBT is imposed.[30] The trial court properly concluded that "[s]ince the PBT's incidence of taxation is not on the consumer and the tax is not paid using SNAP benefits, the PBT is not preempted." Trial Court 12/19/16 Opinion at 10. As a result, the trial court did not err in sustaining the City's preliminary objection to Count III of the complaint and dismissing that count.

## III.

Objectors next claim that the trial court erred in holding that the PBT does not violate the Uniformity Clause of the Pennsylvania Constitution[31] because

---

[30] *See, e.g., Posr*, slip op. at 9 ("The fact that 'a private entity performs a function which serves the public does not make its acts state action.' 'Actions of a private entity are attributable to the State if "there is a sufficiently close nexus between the State and the challenged action of the . . . entity so that the action of the latter may be fairly treated as that of the State itself."' However, 'conduct by a private entity is not fairly attributable to the state merely because the private entity is a business subject to extensive state regulation or affected with the public interest.'") (citations omitted).

[31] As this Court has noted, "[a] taxpayer challenging the constitutionality of tax legislation bears a heavy burden. . . . It is well-established that tax legislation is presumed to be constitutionally valid and will not be declared unconstitutional unless it 'clearly, palpably, and plainly violates the Constitution.' Furthermore, '[a]ny doubts regarding the constitutionality of tax legislation should be resolved in favor of upholding its constitutionality.'" *DelGaizo v.* **(Footnote continued on next page…)**

it is a property tax based on the dealers' inventory of covered beverages and that a property tax violates the Uniformity Clause if "it is imposed on a quantity and not an *ad valorem* basis." *In re Lawrence Township School District 1947 Taxes*, 67 A.2d 372, 383 (Pa. 1949) citing *Commonwealth ex rel. Department of Justice v. A. Overholt & Co.*, 200 A. 849, 852 (Pa. 1938).[32]

However, Objectors' argument in this regard is based on the faulty premise that the PBT is a property tax.[33] As stated above in footnote 17, the PBT is an excise tax "imposed only when the supply, acquisition, delivery [of a sugar-sweetened beverage to a dealer] or transport [of a sugar-sweetened beverage into the City by a dealer] is for the purpose of the dealer's holding out for retail sale within the City the sugar-sweetened beverage or any beverage produced

---

**(continued…)**

*Commonwealth*, 8 A.3d 429, 433 (Pa. Cmwlth. 2010), *exceptions overruled*, 23 A.3d 610 (Pa. Cmwlth. 2011), *aff'd*, 65 A.3d 289 (Pa. 2013) (citations omitted).

[32] As the Pennsylvania Supreme Court has stated:

> 'Taxes are either specific or *ad valorem*. Specific taxes are of a fixed amount by the head or number, or by some standard of weight or measurement and require no assessment other than a listing or classification of the subjects to be taxed. An *ad valorem* tax is a tax of a fixed proportion of the value of the property with respect to which the tax is assessed, and requires the intervention of assessors or appraisers to estimate the value of such property before the amount due from each taxpayer can be determined. * * *'

*A. Overholt & Co.*, 200 A. at 852 (citation omitted).

[33] Thereby distinguishing the cases cited in support of Objectors' argument in this regard.

therefrom." Phila. Code §19-4103(1). Likewise, Section 201 of the Regulations states:

> [The PBT] is imposed upon each of the following: the supply of any [sugar-sweetened beverage] to a Dealer; the acquisition of any [sugar-sweetened beverage] by a Dealer; the delivery to a Dealer in the City of any [sugar-sweetened beverage]; and the transport of any [sugar-sweetened beverage] into the City by a dealer. The tax shall be imposed only once with respect to any individual item of [sugar-sweetened beverage]. The tax is imposed only when the supply, acquisition, delivery or transport is for the purpose of the Dealer's holding out for retail sale within the City either the [sugar-sweetened beverage] or a beverage produced therefrom.

The PBT is not imposed on the ownership of the sugar-sweetened beverages or on their sale; rather, it is only imposed if the beverages are supplied, acquired, delivered, or transported for purposes of holding them out for retail sale in the City. As a result, the PBT is properly assessed at a specific rate per fluid ounce of sugar-sweetened beverage or its equivalent and not on an *ad valorem* basis. *See, e.g., South Union Township v. Commonwealth*, 839 A.2d 1179, 1191 (Pa. Cmwlth. 2003) ("Each 'operator of a municipal waste landfill [pays] ... a disposal fee of $4 per ton for all solid waste disposed . . . .' 27 Pa. C.S. §6301(a). Petitioners have simply not pleaded facts to show that this disposal fee is not imposed uniformly or that the classification *clearly*, *palpably*, *and plainly* violates the Constitution. Petitioners' unsupported, conclusory allegations are insufficient to overcome the strong presumption of constitutionality.") (citation omitted and emphasis in original); *Blair Candy Co., Inc.*, 613 A.2d at 161 ("The cigarette tax is an *excise tax* imposed at the specific rate of one and fifty-five hundredths of a cent per cigarette. Therefore, the cigarette tax is a *specific* tax, imposed at a stated dollar amount per item. By contrast, the Pennsylvania sales tax as set forth in

32

Article II of the [Tax Code] is an *ad valorem* tax imposed on each separate sale at retail of tangible personal property or services at a rate of six percent of the purchase price to be collected by the vendor.") (emphasis in original).  Based on the foregoing, the trial court did not err in sustaining the City's preliminary objections to Counts IV through VII of Objectors' complaint and dismissing those counts.

## IV.

Finally, Objectors claim that the trial court erred in denying their request for a special injunction.  In general:

> Although the former equity rules made minor distinctions between "special" and "preliminary" injunctions, the current Rules of Civil Procedure treat them exactly alike and the words are used interchangeably.
>
> A special injunction, like a preliminary injunction, is commonly sought to preserve the status quo until the final hearing.  A special injunction may be asked for during the pendency of an equity action, and it may be granted at any stage of the proceedings, whenever it is necessary to preserve the status quo.

15 Standard Pennsylvania Practice 2d §83:11 (2017) (footnotes omitted).

The essential prerequisites for the issuance of such an injunction are as follows:

> (1) the injunction is necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages; (2) greater injury would result from refusing the injunction than from granting it, and, concomitantly, the issuance of an injunction will not substantially harm other interested parties in the proceedings; (3) the preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct; (4) the party seeking injunctive relief has a clear right to relief and is likely to prevail on the

33

merits; (5) the injunction is reasonably suited to abate the offending activity; and, (6) the preliminary injunction will not adversely affect the public interest.

*SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 502 (Pa. 2014) (citing *Warehime v. Warehime*, 860 A.2d 41, 46-47 (Pa. 2004)). Because the grant of a preliminary injunction is an extraordinary remedy, the failure to establish a single prerequisite requires the denial of the request for an injunction. *Summit Towne Centre, Inc. v. Shoe Show of Rocky Mount, Inc.*, 828 A.2d 995, 1000 (Pa. 2003).

As outlined above, Objectors cannot prevail on the merits of their claims regarding the purported invalidity of the PBT. As a result, Objectors were not entitled to the requested injunctive relief and the trial court had apparently reasonable grounds for denying Objectors' request.

Accordingly, the trial court's orders are affirmed.

 

 

MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lora Jean Williams; Gregory J. Smith; :
CVP Management, Inc. d/b/a or t/a :
City View Pizza; John's Roast Pork, Inc. :
f/k/a John's Roast Pork; Metro Beverage :
of Philadelphia, Inc. d/b/a or t/a Metro :
Beverage; Day's Beverages, Inc. d/b/a or :
t/a Day's Beverages; American Beverage :
Association; Pennsylvania Beverage :
Association; Philadelphia Beverage :
Association; and Pennsylvania Food :
Merchants Association, :
                                     :
              Appellants :
                                      :
                  v. : No. 2077 C.D. 2016
                          : No. 2078 C.D. 2016
City of Philadelphia and Frank Breslin, :
in His Official Capacity as Commissioner :
of the Philadelphia Department of Revenue :

# **O R D E R**

AND NOW, this 14th day of June, 2017, the orders of the Philadelphia County Court of Common Pleas dated December 19, 2016, at No. September Term, 2016 No. 01452, are AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge

Lora Jean Williams; Gregory J. Smith;    :
CVP Management, Inc. d/b/a or t/a     :
City View Pizza; John's Roast Pork, Inc. :
f/k/a John's Roast Pork; Metro Beverage :
of Philadelphia, Inc. d/b/a or t/a Metro  :
Beverage; Day's Beverages, Inc. d/b/a or :
t/a Day's Beverages; American Beverage :
Association; Pennsylvania Beverage     :
Association; Philadelphia Beverage      :
Association; and Pennsylvania Food      :
Merchants Association,                  :
                  Appellants    :
                           :
          v.              :
                           :
City of Philadelphia and Frank Breslin,  :
in His Official Capacity as Commissioner:  No. 2077 C.D. 2016
of the Philadelphia Department of     :  No. 2078 C.D. 2016
Revenue                      :  Argued: April 5, 2017

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE JULIA K. HEARTHWAY, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge

DISSENTING OPINION BY
JUDGE COVEY                       FILED: June 14, 2017

       I respectfully dissent from the Majority's conclusion that "the [portion of the Philadelphia Code known as the Philadelphia Beverage Tax (]PBT[)[1]] does not violate the duplicative-tax prohibition in [the statute commonly referred to as] the

---

[1] Phila. Code §§ 19-4101 – 4108.

Sterling Act[2] or encroach upon a field preempted by the [Commonwealth's tax on the retail sale of soft drinks (]Sales Tax[)[3]] because the [PBT and the Sales T]ax[] do not share the same incidence and **merely have related subjects**." Majority Op. at 19 (emphasis added).

While I acknowledge that the PBT does not *appear* to be duplicative of the Sales Tax because it is not explicitly labeled a **retail sales** tax, the Majority ignores that the PBT is **only triggered when there is a retail sale** involved. The Majority states: "[A] tax's 'operation or incidence' refers to the substantive text of the ordinance and does not concern the post-tax economic actions of private actors in response to the imposition of the PBT." Majority Op. at 16. A review of the PBT in its entirety reveals that it is in fact duplicative of the Sales Tax. "To learn and give effect to the legislative intention expressed in a statute or ordinance is the cardinal objective of construction. **An ordinance must be construed as an entirety, and the legislative intention that is contained within it must be determined accordingly, and not from a part thereof.**" *Detweiler v. Derry Twp. Mun. Auth.*, 370 A.2d 810, 812 n.2 (Pa. Cmwlth. 1977) (emphasis added; citations omitted); *see also Snyder Bros., Inc. v. Pa. Pub. Util. Comm'n,* ___ A.3d ___ (Pa. Cmwlth. Nos. 1043, 1175 C.D. 2015, filed March 29, 2017).

When considering the relevant portions of the PBT and the Pennsylvania Tax Reform Code of 1971 (Tax Code),[4] it is important to be mindful of what constitutes a "tax." "Tax" is defined as: "A charge, usu[ally] monetary, imposed by the government on persons, entities, transactions, or property to yield public revenue. Most broadly, **the term embraces all governmental impositions on the** person, **property**, privileges, occupations, and enjoyment of the people, and includes duties,

---

[2] Act of August 5, 1932, Ex.Sess., P.L. 45, *as amended*, 53 P.S. §§ 15971-15973.
[3] Section 202(a) of the Act of March 4, 1971, P.L. 6, *as amended*, Pennsylvania Tax Reform Code of 1971, 72 P.S. § 7202(a), imposing a tax on the retail sale of soft drinks.
[4] 72 P.S. §§ 7101-10004.

imposts, and excises." *Black's Law Dictionary* 1594 (9th ed. 2009) (emphasis added).

> Section 202(a) of the Tax Code provides:
>
> There is hereby **imposed upon each separate sale at retail** of tangible personal property or services, as defined herein, within this Commonwealth **a tax** of six per cent of the purchase price, which tax shall be collected by the vendor from the purchaser, and shall be paid over to the Commonwealth as herein provided.

72 P.S. § 7202(a) (emphasis added). Section 19-4103(1) of the PBT mandates:

> a tax is imposed upon each of the following: the supply of any sugar-sweetened beverage to a dealer; the acquisition of any sugar-sweetened beverage by a dealer; the delivery to a dealer in the City [of Philadelphia (City)] of any sugar-sweetened beverage; and the transport of any sugar-sweetened beverage into the City by a dealer. **The tax is imposed only when the supply, acquisition, delivery or transport is for the purpose of the dealer's *holding out for retail* sale within the City the sugar-sweetened beverage or any beverage produced therefrom.** The tax is to be paid as provided in [Section 4105 of the PBT, Phila. Code] § 19-4105 (liability for payment of tax) and [Section 4107 of the PBT, Phila. Code] § 19-4107 (waivers).

Phila. Code § 19-4103(1) (italic and bold emphasis added). Section 19-4105(1) of the PBT states: "The tax shall be paid to the City **by the registered distributor**; and **the dealer shall not be liable** to the City for payment of the tax; so long as the registered distributor has received from the dealer notification . . . that the recipient is a dealer." Phila. Code § 19-4105(1) (emphasis added).

However, the PBT defines a **dealer** as: "**Any person engaged in the business of selling sugar–sweetened beverage *for retail sale* within the City**, including but not limited to restaurants; retail stores; street vendors; owners and operators of vending machines; **and distributors who engage *in retail sales*[,]**" and distributor as: "**Any person who supplies sugar-sweetened beverage to a dealer.**"

Phila. Code § 19-4101(1), (2) (italic and bold emphasis added).  Section 19-4102 of the PBT further declares:

> (1) **No dealer may *sell at retail*, or hold out or *display for sale at retail*, any sugar-sweetened beverage acquired by the dealer on or after January 1, 2017, unless**:
>
> (a) The sugar-sweetened beverage was acquired by the dealer from a registered distributor; and
>
> (b) The dealer has complied with the notification requirements of [Section 19-4104 of the PBT, Phila. Code] § 19-4104; and received confirmation from the registered distributor of such notification, as well as confirmation that the distributor is a registered distributor, all in form prescribed by the Department.

Phila. Code § 19-4102 (italic and bold emphasis added).  Thus, a distributor is **only taxed if the sugar-sweetened beverage is *held out for retail sale***, and **no dealer can sell a sugar-sweetened beverage at retail *unless the tax has been paid***.

In interpreting the ordinance as a whole, like we must, its entire underpinning is the retail sale mandate.  The PBT contains only eight sections; one section provides definitions, one speaks to administration and one refers to waivers.  Each of the remaining five sections states that **the tax can only be imposed in relation to the retail sale** of sugar-sweetened beverages.  Accordingly, the PBT implicates both supply *and* sale at retail, making the PBT a duplicative tax.

Relevantly, the Majority focuses on the fact that the distributor is taxed; thus, isolating the incidence of the tax to the distribution.  However, Section 19-4105(4) of the PBT provides:

> In the event a court of competent jurisdiction rules in a decision from which no further appeal lies that any portion of this Chapter cannot be applied to a distributor with respect to any transaction or class of transactions, then *any dealer that holds out for retail sale* in the City sugar-sweetened beverages supplied through those transactions

> ***shall be liable to the City for the tax*** on those sugar-sweetened beverages.

Phila. Code § 19-4105(4) (italic and bold emphasis added). In addition, if the dealer does not provide the distributor the required notice, **the dealer is liable to pay the tax**. *See* Phila. Code § 19-4105. Moreover, Section 19-4107(1) of the PBT states:

> Upon a showing of extraordinary circumstances, **where distribution channels would make purchase of sugar-sweetened beverage from a registered distributor substantially impracticable**, **the Department**, in its discretion, **may grant a full or partial waiver to a dealer** from the provisions of [Section 4102(1) of the PBT, Phila. Code] § 19-4102(1). **In such case**, as well as during the pendency of any application for waiver under this subsection, **the tax shall be paid directly by the dealer to the Department**, in such manner and using such forms as the Department shall prescribe. The Department may require an annual demonstration of continuing extraordinary circumstances in order to continue a waiver.

Phila. Code § 19-4107(1) (emphasis added). Finally, Section 19-4103(1) of the PBT clearly states that the liability for payment of the tax, and thus, the target of the tax is the "dealer's holding out for retail sale." Phila. Code § 19-4103(1). Section 19-4105 of the PBT reads, in pertinent part:

> (1) The tax shall be paid to the City by the registered distributor; and **the dealer shall not be liable** to the City **for payment of the tax**; **so long as the registered distributor has received from the dealer notification** pursuant to § 19-4104(1) that the recipient is a dealer.
>
> (2) In addition to any penalties provided hereunder, **a dealer who fails to provide the notification** required by § 19-4104(1); *and* a dealer **who sells at retail, or holds out or displays for sale at retail**, **any sugar-sweetened beverage** in violation of § 19-4102(1), **shall be liable** to the City **for payment of** any **tax** owing under this Chapter, and shall file returns with the Department in form prescribed by the Department.

Phila. Code § 19-4105 (italic and bold emphasis added). In the same vein of capturing the tax when the sugar-sweetened beverage is intended for retail sale, Section 19-4108 of the PBT mandates:

> **In addition to any other penalties** provided under this Title, **a violation of** [Section] 19-4102(1) [of the PBT] (**sale of product purchased from other than a registered distributor** or without proper notification to a registered distributor) **shall constitute a Class II Offense** under 1-109; **and each separate sale**, transaction or delivery **shall constitute a separate offense**.

Phila. Code § 19-4108 (emphasis added). Thus, the clear wording of the PBT evidences that the "distributor" is **not** in fact the target of the tax. Contrary to the Majority's conclusion **that the PBT is a "distribution" tax, the PBT is a tax imposed *only* where the sugar-sweetened beverage is sold or intended to be sold *at retail*, and the PBT is imposed regardless of whether there is a distributor involved.** Majority Op. at 19 (emphasis added). Consequently, the "distribution" is **not** the tax incidence as the Majority concludes. *Id.*

The Majority cites "Example 11 of the Regulations" (wherein a distributor is entitled to "a credit or refund" if sugar-sweetened beverages were purchased by the dealer with the intent to sell in the City but the beverages were actually sold outside of the City), to support its position that the existence of the refund does not make it a duplicative tax. Majority Op. at 18 n.18. However, that example buttresses the Dissent's position, i.e., no retail sale in the City equals no tax. Given that the tax will force retailers to sell sugar-sweetened beverages outside the City because of the PBT, the scenario in Example 11 is actually more likely than not. When a retailer cannot move his sugar-sweetened beverages in the City and is driven to sell them outside the City, the City will not get the tax (because the distributor will get a refund), just as no retail sales tax will be obtained if the beverages are not sold.

Importantly, **unlike** the ordinances reviewed in the cases cited by the Majority, **the PBT is *only* triggered when a retail sale is involved**, making this a case of first impression. *See Gurley v. Rhoden,* 421 U.S. 200 (1975); *John Wanamaker v. Sch. Dist. of Phila.*, 274 A.2d 524 (Pa. 1971); *Blauner's v. City of Phila.,* 198 A. 889 (Pa. 1938); *Provident Mutual Life Ins. Co. v. Tax Review Bd.*, 750 A.2d 942 (Pa. Cmwlth. 2000); *Pocono Downs, Inc. v. Catasauqua Area Sch. Dist.,* 669 A.2d 500 (Pa. Cmwlth. 1996).

*United Tavern Owners of Philadelphia v. School District of Philadelphia*, 272 A.2d 868 (Pa. 1971), is the only case that cannot be distinguished from the facts of the instant matter. Although as the Majority notes: "*United Tavern*, . . . [is a] plurality opinion [that] has never been adopted by a majority of the Supreme Court[,]" it has never been overruled and remains good law. Majority Op. at 21 n.20. As in the present case, it was argued in *United Tavern*

> that the ordinance in question does not violate the preemption provision of the Sterling Act **because it is imposed on a different transaction** than that on which the two state taxes are imposed. According to this argument[,] the local tax would be imposed on the transaction between the holder of the retail liquor license, i.e., the owner of the hotel or bar, and the consumer, whereas the state taxes are imposed on the transaction between the holder of the liquor license and his distributor, the state liquor store.

*Id.* at 873 (emphasis added). The Court rejected that argument, holding:

> We do not accept this view. [It is] our view, the state taxes on liquor are classic sales taxes. The only reason that the definition of sales in the case of liquor is different from the definition with regard to other items covered by the sales tax is because the existence of a statewide system of state-operated distribution centers for liquor made it possible to assure effective collection of the tax by imposing the tax on the sale at the state store.

*Id.* While the case before us does not involve liquor, it does involve taxing the distributor "to assure effective collection of the tax[.]" *Id.* As in *United Tavern*, the imposition of the tax on the distributor does not change the nature of what is, in essence, a sales tax.

"[P]reliminary objections **shall only be sustained when they are free and clear from doubt**." *Petty v. Hosp. Serv. Ass'n of N.E. Pa.,* 967 A.2d 439, 443 n.7 (Pa. Cmwlth. 2009) (emphasis added), *aff'd*, 23 A.3d 1004 (Pa. 2011). Our Supreme Court has declared:

> As [a] taxing statute[], [the PBT] **must be strictly construed against the government**, **and any doubt or ambiguity in the interpretation of their terms must, therefore, be resolved in favor of the taxpayer**. 1 Pa.C.S.[] § 1928; *Skepton v. Borough of Wilson, . . .* 755 A.2d 1267, 1270 ([Pa.] 2000).

*Tech One Assocs. v. Bd. of Prop. Assessment, Appeals & Review of Allegheny Cnty.,* 53 A.3d 685, 696 (Pa. 2012) (emphasis added).

Construing the PBT against the government as mandated, I would hold that the Commonwealth has preempted the field through the Sales Tax, and the PBT is invalid under the Sterling Act. Further, given that this matter is an issue of first impression and the obvious doubt as demonstrated by the numerous positions presented, the determination of whether the PBT is invalid under the Sterling Act is not "**free and clear from doubt,**" and therefore, the preliminary objections to Counts I and II of Appellants' Complaint should be overruled.[5] *Petty,* 967 A.2d at 443 n.7

---

[5] Because Appellants' Complaint Counts I and II overlap Count III, I would overrule the preliminary objections to Count III as well. Relative to the Uniformity Clause, because the PBT duplicates the Sales Tax, I cannot agree with the Majority's analysis that the PBT is an excise tax. Thus, I would also overrule the preliminary objections to Counts IV through VII. Finally, with respect to the special injunction, while I disagree that Appellants cannot prevail on the merits, I believe that "the injunction is [not] necessary to prevent immediate and irreparable harm that cannot be compensated adequately by damages[,]" and for that reason I would deny the injunction. *SEIU Healthcare Pa. v. Commonwealth*, 104 A.3d 495, 502 (Pa. 2014).

(emphasis added).  This result is especially true here where the Majority does not cite with certainty to any legal authority squarely on point.

For all of the above reasons, I would reverse the trial court's order sustaining Appellees' preliminary objections and dismissing Appellants' Complaint, and remand the matter to the trial court for further proceedings.


_____
ANNE E. COVEY, Judge

Judge Cohn Jubelirer joins in this dissenting opinion.